NO. 07-10-00184-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 25, 2011

IN THE INTEREST OF D.S., N.S., CHILDREN

FROM THE 106TH DISTRICT COURT OF GARZA COUNTY;

NO. 05-11-06063-CV; HONORABLE KEVIN C. HART, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

On October 29, 2009, appellee, the Texas Department of Family and Protective Services, filed a petition seeking termination of the parental rights of the biological parents of D.S. and N.S.[1]

This was not the first such petition the department filed with respect to the parents' rights to the children. In November 2005, the department filed a petition which, as amended, sought relief including termination. Proceedings under that petition

---

[1] In September 2009, the mother made a joint adoption agreement with the foster parents of D.S. and N.S. She also signed an affidavit voluntarily relinquishing her parental rights to the children. The court's order terminated her parental rights because of her voluntary relinquishment. She does not appeal the order. We identify the children by their initials and the parents as the father and mother, pursuant to Rule of Appellate Procedure 9.8. Tex. R. App. P. 9.8.

culminated in a final order signed in September 2007, appointing the department permanent managing conservator of the children and the parents possessory conservators.

The October 2009 petition was heard on March 11, 2010, after which the trial court rendered an order terminating both parents' parental rights and continuing the department's role as permanent managing conservator of the children.[2] The father appeals, arguing through four issues the evidence was insufficient to support findings that termination was in the best interest of the children, he received ineffective assistance of counsel at trial, his appearance by telephone at trial did not constitute meaningful participation, and the evidence was insufficient to support findings on two predicate grounds for termination. We will affirm.

## Background

The department's involvement with the father and mother dates to February 2005 when it received a report of "neglectful supervision" of D.S., N.S., and three other children. According to the department, the father and mother allowed drug users in their home and were themselves involved in drug use, testing positive for methamphetamine.

---

[2] The court found termination in the best interest of the children. It also found father: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; (3) had his parent-child relationship terminated with respect to another child based on a finding that father's conduct violated Family Code § 161.001(1)(D) or (E); (4) constructively abandoned the children; (5) knowingly engaged in criminal conduct resulting in his conviction and confinement and inability to care for the children for not less than two years from the date of filing the petition. Tex. Fam. Code Ann. § 161.001(1)(D),(E),(M),(N),(Q) (West Supp. 2010).

In August 2005, the father was arrested and charged with possession of methamphetamine with intent to deliver. Under a plea bargain agreement, he was sentenced to ten years confinement in prison. He remained incarcerated at the time of trial, having four times been denied parole. According to the department, the parents did not make progress complying with a service plan.

The department obtained temporary managing conservatorship of D.S. and N.S. in December 2005. The children were placed with relatives of the father from December 2005 until September 2006. They were removed, according to the department, because of bruising from inappropriate spankings. Three placements followed, the last with foster parents M.H. and G.H., where the children remained at the time of trial. At the hearing, the foster mother testified generally of the wellbeing of the children in her home. Both children were on a regimen of medications for treatment of ADHD. The foster parents sought adoption of the children and entered an open adoption agreement with the mother on September 21, 2009. According to a caseworker, the children wanted to be adopted. Notes from D.S. and N.S. to the court requesting adoption were received in evidence. If the court terminated parental rights, the department's expressed plan at the hearing was to transfer the case for adoption of the children by the foster parents. Should this plan fail, the department viewed the children as "very adoptable." The department contacted a relative of the father regarding possible placement for the children but, according to the caseworker, the relative was caring for her mother and lacked the resources or time to care for two children.

At the time of trial, D.S. was age eight and N.S. age six. Almost five years had passed since their last personal contact with their father. He had been incarcerated eleven of the preceding seventeen years. The department indicated that while incarcerated the father wrote D.S. and N.S. six letters and submitted approximately fifteen letters to the caseworker. The father disputed the number of letters sent the children, believing the total about fifteen. In an order signed July 9, 2007, the parental rights of the father to another child were terminated. As predicate grounds for the termination, the court found the father committed acts listed in paragraphs (E), (F), (N), and (Q) of § 161.001. According to the caseworker, while incarcerated the father was able to perform the requirements of the service plan available in prison. Particularly, he completed "a FAME packet and a parenting packet," a "drug class," and a "parenting seminar." The caseworker testified the father did not demonstrate a stable work history or provide stable family housing. The father testified he expected to be paroled to the home of his mother in Lubbock in November 2010. He added that his choice of two job prospects awaited. According to the father, his mother is "mentally disabled" and unable to care for the children. Also her home is not large enough for the children. The father explained he needs time, "two or three months," to begin work and find a home. He acknowledged a time of adjustment would be required for him to reunite with the children.

Analysis

Sufficiency of the Evidence Supporting Best Interest Finding

Through his fourth issue, the father challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of the parent-child relationship was in the best interest of the children.

When reviewing factual findings required to be made by clear and convincing evidence, we apply a standard of review that reflects this burden of proof. *In re S.M.L.,* 171 S.W.3d 472, 476 (Tex.App.--Houston [14th Dist.] 2005, no pet.). A legal sufficiency review requires we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *Id.,* (citing *In re J.F.C.,* 96 S.W.3d at 266). In doing so, we assume the fact finder resolved disputed facts in favor of the finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible. *Id.* However, because of the heightened standard, we must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *In re J.F.C.,* 96 S.W.3d at 266 ("Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence").

A factual sufficiency review, in a proceeding to terminate the parent-child relationship, requires consideration of the entire record to determine whether a factfinder could reasonably form a firm belief or conviction that the finding was true. *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002). "'If, in light of the entire record, the disputed evidence that a reasonable factfinder could not credit in favor of the finding is so significant that a factfinder could not reasonably form a firm belief or conviction in the

5

truth of its finding, then the evidence is factually insufficient.'" *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006) (quoting *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002)).  There is a strong presumption that keeping a child with a parent is in the best interest of the child. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006). It is also presumed that prompt and permanent placement of the child in a safe environment is in the best interest of the child.  Tex. Fam. Code Ann. § 263.307(a) (West 2008).

The Supreme Court of Texas has identified factors for consideration by the trier of fact in determining whether termination is in the best interest of a child, including: the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and any excuse for the acts or omissions of the parent.  *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex. 1976).  However, these considerations are not exhaustive nor is proof of each a condition precedent to termination of the parent-child relationship. *In re C.H.,* 89 S.W.3d at 27.  The absence of evidence of some of the *Holley* considerations does not preclude the factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly in the face of undisputed evidence that the parental relationship endangered the safety of the child. *Id.*  The best interest analysis evaluates the best

6

interest of the child, not the parent. *In re S.A.P.,* 169 S.W.3d 685, 707 (Tex.App.--Waco 2005, no pet.).

The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the children warrants termination of the parent-child relationship. *In re C.H.,* 89 S.W.3d at 28; *In re P.E.W.,* 105 S.W.3d 771, 779 (Tex.App.--Amarillo 2003, no pet.). And a best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re S.H.A.,* 728 S.W.2d 73, 86-87 (Tex.App.--Dallas 1987, writ ref'd n.r.e.). A trier of fact may measure a parent's future conduct by his or her past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex.App.--Waco 1997, pet. denied), *overruled on other grounds by In re C.H.,* 89 S.W.3d at 26.

The department's evidence showed the father had not provided the children with a stable home environment. Indeed, at the time of the March 2010 final hearing, he had been incarcerated eleven of the previous seventeen years. He was continuously jailed or in prison, for methamphetamine possession, since 2005. And D.S. and N.S. had not seen him since his arrest in 2005. The mother's parental rights were terminated. The father's parental rights to another child were terminated in 2007 on multiple predicate grounds. He anticipated release on parole or a release date before completion of his ten-year sentence, but he thus far was denied parole. The only living arrangement for the father on release was his mother's home. But her disability and the size of her house meant the children would remain in placement, even after the father's release,

7

until he was able to provide suitable quarters. He had no other family placement options. While in prison, the father wrote the children and completed the portions of the service plan performable in prison. Since 2005 the children occupied multiple placements. They were removed from the first placement after receiving punishment that produced bruises. At the time of trial, D.S. and N.S. had lived two years in the home of their foster parents. The children performed satisfactorily in school but required medications for treatment of ADHD. The foster parents made an open adoption agreement with the mother and sought adoption if the father's parental rights were terminated. The children wished to be adopted.

Considering all the evidence in relation to the best interest factors in the light most favorable to the court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination was in the best interest of D.S. and N.S. Moreover, viewing all the evidence in a neutral light, we conclude that the disputed and undisputed evidence favoring and disfavoring the finding permits a reasonable fact-finder to form a firm belief or conviction that termination was in the best interest of D.S. and N.S. Hence, the evidence supporting the court's finding that termination of the father's parental rights was in the best interest of D.S. and N.S. is legally and factually sufficient. *See Holley,* 544 S.W.2d 367; *In re S.M.L.D.,* 150 S.W.3d 754, 756 (Tex.App.--Amarillo 2004, no pet.). We overrule his fourth issue.

Ineffective Assistance of Trial Counsel

By his first issue, the father argues he received ineffective assistance of counsel at trial. As noted, in 2005 the department initiated a suit affecting the father's parent-

child relationship with D.S. and N.S. In an amended petition filed March 8, 2007, the department, among other things, sought termination of the parent-child relationship. The pleading alleged such a result was in the best interest of the children and supported the allegation for termination with four predicate grounds under § 161.001(1). The suit resulted in an order signed September 15, 2007. The father's parental rights to the children were not terminated; rather, the order appointed the department permanent managing conservator of the children and the father possessory conservator.

According to the father, his counsel at the March 2010 hearing should have interposed res judicata as a bar to litigating issues tried in the April 2007 termination proceeding. Because trial counsel did not raise the defense, and even elicited testimony of matters predating April 27, 2007, his representation was ineffective, the father argues.

The Family Code requires appointment of counsel for representation of an indigent parent who opposes the termination of his parental rights. Tex. Fam. Code Ann. § 107.013(a)(1) (West 2008). The standard for reviewing the effectiveness of appointed counsel's representation is that set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See In re M.S.,* 115 S.W.3d 534, 545 (Tex. 2003); *In re J.O.A.,* 262 S.W.3d 7, 18 (Tex.App.--Amarillo 2008), *aff'd as modified and remanded*, 283 S.W.3d 336 (Tex. 2009). The *Strickland* standard requires the complaining party to establish: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the complaining party. *Strickland,* 466 U.S. at 687; *In re M.S.,* 115 S.W.3d at 545; *In re*

9

*J.O.A.,* 262 S.W.3d at 18. An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The provisions of Family Code § 161.004 bear on the father's contention. That section provides:

> (a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:
>
>> (1) the petition under this section is filed after the date the order denying termination was rendered;
>>
>> (2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;
>>
>> (3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and
>>
>> (4) termination is in the best interest of the child.
>
> (b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

Tex. Fam. Code Ann. § 161.004(a),(b) (West 2008).

Here, § 161.004 has application because: (1) the department filed its live petition for termination of the parent-child relationship on October 29, 2009, a date after

10

rendition of the order denying termination; (2) the circumstances of D.S. and N.S. and the mother materially and substantially changed on September 21, 2009, when the mother signed an open adoption agreement and an affidavit voluntarily relinquishing parental rights to D.S. and N.S.; (3) on July 9, 2007, the parent-child relationship of the father and another child was terminated based on a finding that his conduct violated § 161.001(1)(E); and, (4) as noted above, the evidence supported a finding termination was in the best interest of D.S. and N.S.

Section 161.004(b) allowed the trial court to consider evidence at the second hearing presented in favor of termination at the previous hearing. *See In re M.F.,* No. 11-08-0276-CV, 2010 Tex. App. Lexis 3676, at *4 (Tex.App.--Eastland May 13, 2010, no pet.) (mem. op.) (reasoning despite claim of res judicata § 161.004 permits trial court to consider evidence of conduct preceding previous order denying termination). Thus, counsel for the father was not required to challenge the admissibility of evidence at the 2010 hearing on the ground it existed at the time of the 2007 hearing. With the authorization granted by § 161.004(b), such an objection would have lacked merit.

Additionally, the father does not demonstrate how his counsel rendered ineffective assistance by adducing evidence of events occurring before April 27, 2007. In light of the function of § 161.004, something beyond failure to present a res judicata defense is necessary. Otherwise, we presume counsel's decision to present the evidence was reasonable. *See In re H.R.M.,* 209 S.W.3d 105, 111 (Tex. 2006) (for ineffective assistance determination, court indulges in strong presumption of reasonableness including possible strategic reason).

11

We conclude the record before us does not establish the performance of the father's trial counsel was deficient. His first issue is overruled.

Meaningful Participation of the Father at Trial

Before the termination hearing, the trial court denied the father's request for a bench warrant authorizing his live appearance at the hearing. He was, however, allowed to appear by telephone and was represented at the hearing by appointed counsel.

Through his statement of appellate points filed in the trial court and his second issue on appeal, the father argues the trial court reversibly erred by denying his request for a bench warrant and the opportunity to appear live at trial. But this is not the issue the father argues in his brief. Rather, he complains his telephonic appearance was not meaningful because of malfunctioning telephone equipment, the occasional loss of the telephone connection, and interruptions of the proceeding as the trial court verified the father's presence on the telephone line. These facts, the father argues without citation, mean he was denied meaningful participation in the hearing.

The father's presentation of his second issue is problematic. First, preservation of error concerning meaningful participation by telephone required the father to make a timely objection specifying the grounds for the objection at the earliest opportunity and obtain an adverse ruling from the trial court. Tex. R. App. P. 33.1(a)(1). Moreover, we may not consider an issue that was not specifically presented to the trial court in a timely-filed statement of points. Tex. Fam. Code Ann. § 263.405(i) (West 2008). While the record documents random problems with the telephone equipment or the quality of

12

the call, it does not contain a corresponding complaint by the father. And he did not identify this issue as a point for appeal in his statement of points. Second, an appellate brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record." Tex. R. App. P. 38.1(i). Failure to cite supporting authority or advance a substantive analysis waives the issue on appeal. *Sunnyside Feedyard, L.C. v. Metro. Life Ins. Co.,* 106 S.W.3d 169, 173 (Tex.App.--Amarillo 2003, no pet.). The father presents no authorities or argument supporting his complaint that the trial court erred by denying his request for a bench warrant.

But even had the father briefed any claimed error arising from the trial court's denial of his request for a bench warrant or preserved error concerning the quality of telephone equipment or service, the issue would lack merit.

An inmate has no absolute right to appear in person for the trial of a civil case, *Armstrong v. Randle,* 881 S.W.2d 53, 56-57 (Tex.App.--Texarkana 1994, writ denied), but he may not be denied reasonable access to the courts. A prisoner requesting a bench warrant must justify the need for his presence;[3] it is not the obligation of the trial

---

[3] In *In re Z.L.T.,* the court noted:

Texas courts of appeals have recognized a variety of factors that trial courts should consider when deciding whether to grant an inmate's request for a bench warrant. These factors include the cost and inconvenience of transporting the prisoner to the courtroom; the security risk the prisoner presents to the court and public; whether the prisoner's claims are substantial; whether the matter's resolution can reasonably be delayed until the prisoner's release; whether the prisoner can and will offer admissible, noncumulative testimony that, cannot be effectively presented by deposition, telephone, or some other means; whether the prisoner's presence is important in judging his demeanor and credibility; whether the

court to go beyond the bench warrant request and independently inquire of the necessity of the inmate's live appearance. *In re Z.L.T.,* 124 S.W.3d 163, 166 (Tex. 2003). In bench warrant cases, if a court determines a *pro se* inmate in a civil suit may not appear personally, it may, however, allow the inmate to appear by telephone, affidavit, or deposition. *In re D.D.J.,* 136 S.W.3d 305, 314 (Tex.App.--Fort Worth 2004, no pet.). Here, not only did the father appear by telephone but he was represented by appointed counsel. On this record, the trial court did not abuse its discretion by denying the father's request for a bench warrant. *See In re Z.L.T.,* 124 S.W.3d at 165 (order denying bench warrant reviewed for abuse of discretion).

This case was tried to the bench and the record indicates throughout the proceeding the trial court was conscious of the father's participation by telephone. At times when the father said he was unable to hear, the court directed witnesses and counsel to speak loudly. At one point during testimony the telephone connection was lost, briefly restored, and lost again. The court substituted telephones and allowed the witness to be re-questioned. The father testified at length on direct and cross-examination. There is no record indication his testimony was hindered or otherwise limited by use of a telephone. Throughout the hearing the father was freely permitted to interrupt the proceeding if he had difficulty hearing or if a problem with the telephone

---

trial is to the court or a jury; and the prisoner's probability of success on the merits.

124 S.W.3d 163, 165-66 (Tex. 2003). In its order denying the requested bench warrant, the trial court considered these factors as well as whether the father was represented by counsel.

occurred.  The court accommodated the father's telephone-related complaints.  At the conclusion of evidence, the father made no complaint of his participation by telephone or otherwise indicated he was unable to participate in any portion of the hearing.

"A trial court's inherent power includes broad discretion over the conduct of its proceedings." *State ex rel. Rosenthal v. Poe,* 98 S.W.3d 194, 199 (Tex.Crim.App. 2003); *see* Tex. R. Evid. 611 ("[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment").  This record does not demonstrate the trial court abused its discretion conducting the termination hearing with the father appearing by telephone.  The father's second issue is overruled.

Sufficiency of the Evidence Supporting Certain Predicate Grounds

By his third issue, the father challenges the legal and factual sufficiency of the evidence supporting two of the predicate grounds for termination found by the trial court.

In its written termination order, the trial court made findings supporting termination according to paragraphs (D), (E), (M), (N), and (Q) of § 161.001(1).  The father, however, challenges the sufficiency of the evidence supporting termination under paragraphs (D) and (E) of § 161.001(1), and raises no appellate complaint regarding the trial court's findings under paragraphs (M), (N), or (Q). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination." *In re A.V. and J.V.,* 113 S.W.3d 355, 362 (Tex. 2003).  If multiple predicate grounds are found by the

trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights. *In re S.N.,* 272 S.W.3d 45, 49 (Tex.App.--Waco 2008, no pet.). We are bound by the unchallenged findings supporting termination under paragraphs (M), (N), and (Q).[4]  *See Perez v. Texas Dep't of Protective & Regulatory Servs.,* 148 S.W.3d 427, 434 (Tex.App.--El Paso 2004, no pet.); *In re L.M.,* 104 S.W.3d 642, 647 (Tex.App.--Houston [1st Dist.] 2003, no pet.).  *See also In re A.C.,* No. 07-07-0354-CV, 2008 Tex. App. Lexis 2718, at *2 (Tex.App.--Amarillo April 16, 2008, no pet.) (mem. op.).  We therefore need not address the father's challenges of the sufficiency of the evidence supporting termination under paragraphs (D) and (E).

Additionally, the evidence at trial included an order terminating the parent-child relationship of the father and another child under § 161.001(1)(E). This fact also is a predicate ground for termination, § 161.001(1)(M), and the trial court included such a finding in its order.  The father suggests no basis for challenge of this finding on appeal and we see no meritorious basis in the record.  Thus, regardless of the scope of the father's sufficiency complaint, at least one predicate ground supports termination of the parent-child relationship between the father and D.S. and N.S.  We overrule his third issue.

---

[4] *Flowers v. Texas Dep't of Human Resources, Tarrant County Welfare Unit,* 629 S.W.2d 891, 893 (Tex.App.--Fort Worth 1982, no writ).

Conclusion

Having overruled the father's four issues on appeal, we affirm the judgment of the trial court.


James T. Campbell
                                        Justice