Opinion filed January 31, 2013



In The

# Eleventh Court of Appeals

No. 11-12-00172-CV

## IN THE INTEREST OF A.C. AND A.C., JR., CHILDREN

On Appeal from the 326th District Court

Taylor County, Texas

Trial Court Cause No. 7099-CX

### MEMORANDUM OPINION

The trial court entered an order terminating the parental rights of the mother and father of A.C. and A.C., Jr. The mother (appellant) has filed a notice of appeal from the termination order. The father has not appealed. We affirm.

In a single appellate issue, appellant asserts that the evidence is legally and factually insufficient to support the finding that termination is in the best interest of her children.

To preserve a challenge to the factual sufficiency of the evidence for appellate review in a jury trial, a party must raise the challenge in a motion for new trial in the trial court. TEX. R. CIV. P. 324(b)(2); *In re A.J.L.*, 136 S.W.3d 293, 301 (Tex. App.—Fort Worth 2004, no pet.).

Appellant did not file a motion for new trial. Therefore, she has waived her right to challenge the factual sufficiency of the evidence. *A.J.L.*, 136 S.W.3d at 302.

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West. Supp. 2012). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

To terminate parental rights under Section 161.001, it must be shown by clear and convincing evidence that the parent has committed one of the acts or omissions listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. Section 161.001(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). This case proceeded to a jury trial. The jury found that the parent-child relationship between appellant and the children should be terminated. Based on the jury's verdict, the trial court entered an order terminating appellant's parental rights to the children. In the order, the trial court found that appellant had committed one or more of the grounds for termination under Section 161.001(1). Specifically, the trial court found by clear and convincing evidence that appellant had:

> [1] knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger[ed] the physical or emotional well-being of the children; or
>
> [2] engaged in conduct or knowingly placed the children with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the children; or
>
> [3] been convicted or ha[d] been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the *Texas Penal Code* or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of the following *Texas Penal Code* sections:
>
> § 22.02 (aggravated assault); or
>
> [4] had her parent-child relationship terminated with respect to another child based on a finding that [appellant's] conduct was in violation of § 161.001(1)(D) or (E), *Texas Family Code*, or substantially equivalent provisions of the law of another state; or

2

[5] knowingly engaged in criminal conduct that ha[d] resulted in [appellant's] conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two (2) years from the date of filing the petition.

*See* Section 161.001(1)(D), (E), (L), (M), (Q).

Appellant acknowledged during her trial testimony that the above grounds for termination under Section 161.001(1) were "likely true." She does not challenge on appeal the trial court's findings that were made pursuant to Section 161.001(1). Any one of the unchallenged findings was sufficient to support termination as long as termination was shown to be in the children's best interest. *See* Section 161.001. Additionally, we have reviewed all of the evidence, and we note that the evidence was legally and factually sufficient to support a finding that appellant committed all five of the above grounds for termination. The trial court also found by clear and convincing evidence that termination of appellant's parental rights was in the children's best interest. *See* Section 161.001(2).

The question before us is whether the best interest finding is supported by legally sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more of the statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266. A trier of fact may measure a parent's future conduct by his or her past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

At the time of trial, A.C., a girl, was seven years old, and A.C., Jr., a boy, was five years old. Appellant was twenty-nine years old. Appellant took A.C. to school on Thursday, January 20, 2011. A.C. had been absent from school the previous two days, and Monday of that week was Martin Luther King Jr. Day, which was a school holiday. A.C.'s teacher, Tiffany Steele, testified that A.C.'s "whole face" looked swollen. Appellant told Steele that A.C. fell and hit her head in the bathtub. Steele said that A.C. had bruises on her face and neck and that "it looked like [A.C. had] broken blood vessels, or petechiae" around her mouth. After appellant left the school, Steele sent A.C. to the school nurse. Steele said appellant repeatedly called her during the school day and told her that she did not hurt A.C.

Later that morning, Steele asked A.C. what happened to her. Initially, A.C. told Steele that appellant told her not to tell. Ultimately, A.C. told Steele that appellant got mad at her because she licked A.C., Jr.'s private part and that appellant put her head under the water in the bathtub. A.C. said that appellant grabbed her by the hair and pushed her head down into the water. A.C. also told Steele that she thought she was going to die when appellant put her head under the water. A.C., Jr. witnessed the incident and was upset by it.

Steele reported the incident to the Texas Department of Family and Protective Services. The Department notified the police. Abilene Police Detective Eric Vickers went to A.C.'s school. Detective Vickers testified that A.C. had bruises on her face and petechiae underneath her eyes. Detective Vickers explained that petechiae can be a sign of asphyxiation or severe trauma. Detective Vickers transported A.C. to the hospital for evaluation. Susie Butz, a registered nurse, saw A.C. at the hospital. Butz testified that A.C. had suffered physical trauma to her face. After A.C. was evaluated at the hospital, Detective Vickers took her to the Child Advocacy Center to be interviewed.

Abilene Police Detective Stacy Cisneros interviewed appellant at the Law Enforcement Center. The interview was recorded, and a copy of the recorded interview was introduced into evidence. Initially, appellant told Detective Cisneros that A.C. fell and hit her face in the bathtub. Detective Cisneros testified that he continued to question appellant because A.C.'s injuries were not consistent with appellant's story. Later, appellant confessed that she slapped A.C. in the face three times and dunked A.C.'s head under the water. Appellant told Detective Cisneros that the incident happened at about 7:00 p.m. on January 17, 2011, and that she kept A.C. home from school the next two days. Appellant admitted during her testimony that she

4

slapped A.C. and slammed her head into the water. Appellant testified that her physical abuse of A.C. devastated A.C. and A.C., Jr.

The Department removed A.C. and A.C., Jr. from appellant's care, and it filed a petition seeking termination of appellant's parental rights to her children. The Department placed the children in the care of appellant's maternal aunt, A.T., and her husband, J.T. Appellant had an extensive history with the Department. In 2004, appellant physically abused her daughter, E.A.W. At that time, E.A.W. was three years old. Appellant testified that, on that occasion, she hit E.A.W. in the face and hit her more than once. The Department removed E.A.W. and appellant's son from her care, placed E.A.W. in A.T.'s care, and placed appellant's son in the care of another aunt.

A.T. filed a petition to terminate appellant's parental rights to E.A.W. That case proceeded to a jury trial. The jury found by clear and convincing evidence that appellant had knowingly placed or knowingly allowed E.A.W. to remain in conditions or surroundings that endangered her physical or emotional well-being, that appellant had engaged in conduct or knowingly placed E.A.W. with persons who engaged in conduct that endangered E.A.W.'s physical or emotional well-being, and that termination of appellant's parental rights was in E.A.W.'s best interest. On October 13, 2009, the trial court entered an order terminating appellant's parental rights to E.A.W. in accordance with the jury's verdict. The trial court also terminated the parental rights of E.A.W.'s father. Later, A.T. adopted E.A.W.

Appellant was charged with a felony offense of aggravated assault with a deadly weapon as a result of the incident in which she injured A.C. Appellant pleaded guilty to the offense, and she was convicted of the offense. She received a five-year prison sentence for the offense. At the time of trial, appellant was in the process of serving her five-year sentence.

Laura Taff, a licensed professional counselor, testified that she had provided counseling to A.C. and A.C., Jr. on a weekly basis since March 7, 2011. A.C. told Taff that she was afraid of appellant and that appellant was mean. A.C. also told Taff that appellant hurt her. In her early counseling sessions with the children, Taff saw indications that A.C. and A.C., Jr. were suffering from attachment disorders. Taff testified that attachment disorders are generally caused by abuse, neglect, or a traumatic event.

Taff testified that A.C. and A.C., Jr. had made significant progress toward their emotional well-being since being placed with A.T. and J.T. Taff said that the children appeared to have a

5

healthy attachment to A.T. and J.T. Taff testified that A.C. and A.C., Jr. needed to live in a healthy and stable environment, that she believed A.T. and J.T. were providing A.C. and A.C., Jr. with such an environment, and that she believed A.C. and A.C., Jr. would thrive if they continued to live with A.T. and J.T.

A.T. testified that A.C. and A.C., Jr. had been in her and her husband's care since January 21, 2011. A.T. said that A.C. and A.C., Jr. had bonded with her, her husband, and E.A.W. A.T. testified that she loved A.C. and A.C., Jr., that she would take care of them, and that she would protect them. She said that she and her husband wanted to adopt A.C. and A.C., Jr.

Appellant testified that she did not intend to hurt A.C. and that she hated herself for what she did to A.C. Appellant described the incident in which she physically abused A.C. as "another mistake." Appellant said that her mother physically, emotionally, mentally, and verbally abused her as a child. She said that her aunts and other family members also abused her when she was a child. Appellant said that she had been diagnosed with dysthymia, depression, and a personality disorder. She also said that, in 2009, she began taking the prescription drug, Lexapro, for treatment of her depression. Appellant testified that she took Lexapro until the first week of January 2011, when she ran out of pills. She said that she was unable to obtain another prescription for Lexapro at that time and that, therefore, she was not taking her medication when she abused A.C. on January 17, 2011.

Appellant received counseling from Rebecca McMurray, a licensed marriage and family therapist, after the incident in which appellant abused E.A.W. Appellant sought help from McMurray with respect to parenting skills and dealing with stress so that what happened to E.A.W. would not happen again. McMurray testified that she counseled appellant for five or six years, that she saw appellant on a weekly basis for the first two or three years, and that, thereafter, the counseling sessions became more sporadic. McMurray believed that appellant made good progress with respect to her parenting skills as a result of the counseling sessions. Appellant had not seen McMurray for about six months before the January 2011 incident in which appellant abused A.C. McMurray had seen appellant two or three times after the incident but had not seen her in over a year at the time of trial.

In 2006, McMurray testified in a custody trial that involved E.A.W. At that time, McMurray testified that she did not believe that appellant posed a risk to her children. In this

6

case, McMurray testified that she believed that appellant loved her children and that she was a good mom. McMurray was surprised when she learned that appellant abused A.C. McMurray believed that appellant took medication for her depression. Appellant told McMurray that she became more depressed and that she struggled to control her emotions when she was not on her medication. Appellant also told McMurray that she had not taken her medication for about two weeks before she abused A.C.

McMurray testified that appellant should have access to A.C. and A.C., Jr. McMurray thought that supervised contact between appellant and the children would be appropriate.

Having reviewed the evidence in the light most favorable to the best interest finding under the *Holley* factors, we hold that a reasonable juror could have formed a firm belief or conviction that terminating appellant's parental rights was in the best interest of A.C. and A.C., Jr. Therefore, the evidence was legally sufficient to support the best interest finding. Had appellant preserved her factual sufficiency challenge, we would hold that the evidence was factually sufficient to support the best interest finding because the disputed evidence as to the best interest finding was not so significant that a juror could not have reasonably formed a firm belief or conviction that termination was in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. Appellant's issue is overruled.

The order of the trial court is affirmed.


TERRY McCALL
JUSTICE


January 31, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.


7