

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-13-00440-CV

---

**IN THE INTEREST OF M.R., J. AND M.R., CHILDREN**

---

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 74,754-D, Honorable Don R. Emerson, Presiding

---

June 9, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant S.B. appeals the termination of her parental rights to her children, M.R., J. and M.R.[1] She presents three issues. We will affirm.

---

[1] S.B.'s parental rights to another of her children, D.J.B., were also terminated in this proceeding. The appeal of that termination will be addressed in a separate opinion. The fathers of M.R.,J. and M.R. voluntarily relinquished their parental rights. Neither father has appealed the termination of his parental rights.

Factual and Procedural Background

M.R.,J., a boy almost seven years old at the time of the October 2013 final hearing, and M.R., a girl five years old at the final hearing, were removed in 2009 from appellant's custody by the Texas Department of Family and Protective Services because of allegations of appellant's drug use and neglect of her children. Except for a short period,[2] the children have been in foster care since. Appellant agreed to give permanent managing conservatorship of the children to the Department in January 2011. In May 2013, the Department filed a petition to terminate the parent-child relationship between appellant and her children. Following a bench trial, the court terminated appellant's rights to both children. This appeal followed.

Analysis

Through three issues, appellant challenges the sufficiency of the evidence to support the grounds on which her parental rights were terminated and the sufficiency of the evidence supporting the trial court's finding that termination of her parental rights was in the best interests of her children.

Standards of Review

The natural right existing between parents and their children is of constitutional dimensions. *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985); *see Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as

---

[2] At one point, the children were placed in a "fictive kinship placement." The children were removed from that placement and returned to foster care following allegations of abuse and neglect by that caregiver.

well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick,* 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. *In re G.M.,* 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights*. In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes (1) one or more of the statutorily-enumerated acts or omissions and (2) that termination of the parent-child relationship is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows also that it was in the best interest of the child for the parent's rights to be terminated. *See id.*

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see* TEX. FAM. CODE ANN. § 161.206(a) (West 2008). "Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations

sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. *In re C.H.,* 89 S.W.3d at 26. We must maintain appropriate deference to the jury's role as factfinder by assuming that it resolved conflicts in the evidence in favor of its finding when reasonable to do so and by disregarding evidence that it reasonably could have disbelieved. *See In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible*. Id.*

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire

4

record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Predicate Ground

Section 161.001(1)(N)[3]

The Texas Family Code permits termination on clear and convincing evidence that termination was in the child's best interest and that the parent committed the following act or omission:

> (N)    constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and: (i) the department or authorized agency has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment.

TEX. FAM. CODE ANN. § 161.001(1)(N). *See In the Interest of D.N.,* 405 S.W.3d 863 (Tex. App.—Amarillo 2013, no pet.) (applying subsection (N)).

Discussion

A parent constructively abandons a child when (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for not less than six months, (2) the State or the authorized agency has made

---

[3] The trial court also found termination appropriate under section 161.001(1)(F) of the Family Code. Because we find the evidence in the record supports termination under section 161.001(1)(N), we do not address the sufficiency of the evidence to support termination under section 161.001(1)(F). *See In re A.V.,* 113 S.W.3d at 362 (only one statutory ground is required to terminate parental rights under section 161.001).

reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. TEX. FAM. CODE ANN. § 161.001(1)(N); *In re M.R.J.M.,* 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *In re A.S.,* 261 S.W.3d 76, 88-89 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  We examine the evidence supporting each element.

*Children in Permanent or Temporary Managing Conservatorship*

It is undisputed that the Department has been the children's permanent managing conservator since January 2011.

*Reasonable Efforts to Return Children to Parent*

Returning a child to a parent, under subsection 161.001(1)(N)(i), does not necessarily mean that the child must be physically delivered to the individual.  *In re D.S.A.,* 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.). "Reasonable efforts" to reunite parent and child can be satisfied through the preparation and administration of service plans.  *Id.* at 570-72; *In re K.M.B.,* 91 S.W.3d 18, 25 (Tex. App.—Fort Worth 2002, no pet.).

Service plans were put into place in 2009 and each stated that the permanency goal was "family reunification," with a concurrent or alternative permanency goal of "relative adoption."  In her trial testimony, appellant acknowledged she did not initially "work the services" called for under the plans for the return of her children to her care. Appellant was incarcerated in a state jail from December 2009 through a date in

6

December 2010.  The next month, she agreed to an order appointing the Department as permanent managing conservator of the children.[4]  She testified she did so because she knew she could not complete the required services by the court date, "so I decided to give the Department [permanent conservatorship] so that I could have enough time to get out and work on my services and start getting my kids back."

Appellant satisfied some requirements of the plan during December 2010.  She completed the required psychological evaluation, completed a drug and alcohol assessment, and some individual counseling. But she did not follow through with the recommendations, including those to maintain contact with the Department, continue counseling, attend meetings with Narcotics Anonymous and provide proof thereof to the Department, or acquire stable housing.  Instead, she testified, she postponed working on the plan because she was preoccupied with the service plan for her new baby, born to her in the state jail.[5]  And she began using drugs again later in 2011.  So, appellant testified, she did not complete any services during that year.  The caseworker noted appellant also "stopped returning phone calls" and failed to provide the Department with a current phone number after the January 2012 placement hearing.

The evidence of the degree to which appellant completed the actions required under the service plans was conflicting.  In any event, however, appellant's own testimony demonstrates her understanding that the route to the return of her children was through compliance with the service plans.  Her testimony, and that of the

---

[4] *See* TEX. FAM. CODE ANN. § 263.404 (permitting final orders appointing the department managing conservator without termination of parental rights).

[5] Appellant testified her parental rights to that child also were terminated. She agreed with her counsel's assessment of that termination: "And that's because you didn't work services and you didn't show up; is that right?"

caseworker describing elements of the plans, supports the trial court's implicit finding that the handling of the plans constituted a reasonable effort on the part of the Department to return the children to appellant.

Appellant argues in her brief that the Department "did not give [her] any other services to work" to aid her reunification with the children after the 2011 order granting the Department permanent managing conservatorship. But she does not cite us to authority suggesting that the Department was required to do so in order to demonstrate its reasonable efforts to return the children to her.[6] The caseworker testified that each time appellant contacted the Department about visitation with her children under the terms of the 2011 order, the Department did its best to accommodate her requests.

The record also contains testimony referring to home studies the Department conducted in efforts to place one of the children with relatives of his father. The trial court could have seen these efforts also as supporting this element of subsection N. See *In re N.R.T.,* 338 S.W.3d 667, 673-74 (Tex. App.—Amarillo 2011, no pet.) (discussing evidence of attempts to place children with relatives as satisfying "reasonable efforts" requirement).

*Lack of Regular Visits or Significant Contact with Children*

The children did not live with appellant at any time between their June 2009 removal and the October 2013 final hearing. Except for the short period noted above, the children have resided in foster homes in or near Amarillo since their removal. After

---

[6] And she argues the Department violated the January 2011 order by denying her visits with her children for reasons not provided by that order. We will address that contention later in this opinion.

her release from state jail, appellant moved to Fort Worth where her mother and sisters lived. At the time of the final hearing, she was living with her father near St. Louis, Missouri, where she had lived since late 2012.

During the 33 months between the January 2011 order and the final hearing, the children saw their mother five times, in January 2011, July 2011, January 2012, and September 2013, and the day before the final hearing in October 2013. She requested a visit for July 2012 but did not attend it because she was hospitalized. She next requested a visit in January 2013 but was not allowed to attend because she failed a drug test given before the visit.[7] Appellant requested another visit with her children in July 2013 but did not attend the visit because she had not yet passed a drug screen test. The case worker noted that "[e]very visit except for yesterday's visit has been the same day as a placement review hearing." Sporadic visits like these have been found sufficient to support a finding of lack of significant contact under section 161.001(1)(N). *See, e.g., In re N.R.T.,* 338 S.W.3d 667, 673-74 (Tex. App.—Amarillo 2011, no pet.); *In re H.R.*, 87 S.W.3d 691, 699 (Tex. App.—San Antonio 2002, no pet.). *See also In re J.J.O.,* 131 S.W.3d 618, 628-29 (Tex. App.—Fort Worth 2004, no pet.) (holding evidence sufficient to support finding that mother had not regularly visited or maintained significant contact with child when mother made only twelve visits during a nine-month period)*; In re P.R.*, 994 S.W.2d 411, 416 (Tex. App.—Fort Worth 1999, pet. dism'd w.o.j.) (finding evidence sufficient under 161.001(1)(N) where mother sporadically visited child, used drugs, and failed to comply with service plan).

---

[7] Appellant attributed the positive hair follicle test in January 2013 to her last marijuana and methamphetamine use in November.

Appellant argues she visited her children "as often as she could."  Even if true, the argument would not defeat the ground for termination.  The Department was required to prove that appellant had not regularly visited or maintained significant contact with her children, not that she lacked desire to visit them.

Appellant also argues the January 2011 order contained no requirement that she have clean drug tests before visiting with the children, so the Department violated the order by preventing her January 2013 and July 2013 visits.  The argument ignores the provision of the court's July 2012 placement review order that ordered appellant not be permitted to visit the children until she had a negative drug screen.  And, in any event, two or three additional visits during the almost three years between the January 2011 order and the termination hearing would not elevate her visits to the level of regular, or her contacts with her children to the level of significant.

The court also heard the caseworker testify that other than a birthday card, appellant had not sent anything to either child since she assumed responsibility for the case in August 2012.

*Parent Demonstrated Inability to Provide Children with Safe Environment*

The evidence supporting a conclusion appellant demonstrated an inability to provide her children with a safe environment begins with that showing the neglect and drug use that led to their initial removal.  The supporting evidence continues with the evidence showing that appellant, alone or in conjunction with their fathers or any other family member, has not provided for her children at any time since their removal. She had to rely on the Department to provide for her children while she was in the state jail,

10

and her drug use prevented her from providing for them after her release. The case worker testified appellant never completed the services set forth in the service plans and has not "demonstrated over time that she can remain free from drug abuse and provide a safe and stable home environment for these children."

Appellant's testimony that after her 2012 move to Missouri, she has abstained from drugs, obtained a job, moved into a substantial home with her father and stepmother, begun the process of regaining her driver's license, made a plan to return to school, surrounded herself with supportive people, and assumed informal custody of her daughter, E.R.,[8] while commendable, do not negate the clear evidence that for a period of years beginning in 2009 she demonstrated an inability to provide her children with a safe environment.

Conclusion

Viewing the evidence in the light most favorable to the Department as the prevailing party, a rational trier of fact could have reasonably formed a firm belief or conviction appellant constructively abandoned her children. Likewise, viewing the evidence as a whole in a neutral light, a rational trier of fact reasonably could have reached the same firm belief or conviction. The evidence is legally and factually sufficient to support the trial court's findings under section 161.001(1)(N). We resolve appellant's first two issues against her.

---

[8] Appellant had previously given permanent managing conservatorship of E.R. to the child's paternal grandmother.

Best Interests

The trial court is given wide latitude in determining the best interest of a minor child; *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex. 1982), and, while there is a strong presumption that keeping a child with a parent is in the child's best interest, it is also presumed that prompt and permanent placement of the child in a safe environment is in the child's best interest. *In re D.S.*, 333 S.W.3d 379, 383 (Tex. App.—Amarillo 2011, no pet.).

In conducting the best interest analysis, we evaluate "[t]he best interest of the child, not the parent." *Id.* at 384. We consider, among other evidence, the *Holley* factors which include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex. 1970). These considerations are not exhaustive nor is proof of each a condition precedent to termination of the parent-child relationship. *In re D.S.*, 333 S.W.3d at 383-84 (*citing In re C.H.,* 89 S.W.3d at 27). Other factors not on the list may be considered when appropriate and undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re C.H.,* 89 S.W.3d at 27.

The evidence supporting the statutory grounds for termination may be used to support a finding that the best interest of the children warrants termination of the parent-child relationship; *id.* at 28; *In re P.E.W.,* 105 S.W.3d 771, 779 (Tex. App.—Amarillo 2003, no pet.), and a best interest analysis may also consider circumstantial evidence, subjective factors, and the totality of circumstances as well as the direct evidence. *In re D.S.,* 333 S.W.3d at 384. In addition, a parent's future conduct may be measured by his or her past conduct in determining whether it is in the child's best interest to terminate parental rights*. Id.*

The trial court could have seen the evidence as showing appellant has no significant parental relationship with either M.R. or M.R.,J. The record conclusively established the children's contacts with their mother since 2010 have been minimal.

The evidence of the children's desires was mixed. There was testimony that after a visit with appellant, five-year-old M.R. was excited that she had seen her mother, that appellant had given M.R. some rings and "that she would probably be moving." But before the visit M.R. told her counselor she didn't remember her mother but did remember her sister, E.R. A counselor also testified M.R. has reactive attachment disorder but is beginning to attach to her foster family and appeared to be happy.

A counselor testified M.R.,J. is normally a "very active, very lively, very happy child, hyperactive" and is "very bonded" to his foster family. She testified that when she saw M.R.,J. after a visit with appellant, "his hyperactivity and impulsiveness was moderate to severe, regression heightened. He would not stay in the therapy -- or the playroom, ran in and out, stated that he was not going to go anywhere, said he was not

13

going to leave, refused to talk about the visit." He had "a lot more difficulty." He has repeatedly told his counselor he does not want to move from his foster family.

Although the Department's caseworker testified that its plan for the children is adoption outside the family, it has not identified a prospective adoptive placement for either child. The foster parents have not expressed interest in adopting the children. The caseworker testified the Department could not begin to seek adoptive placements for the children until termination of parental rights was achieved. As noted, appellant's parental rights to D.J.B, a boy ten years old, also were terminated at the same final hearing. The Department's plan is to locate an adoptive placement for all three children together. That, according to the caseworker, is "possible."

Appellant testified at the hearing to her sobriety for more than a year, her continued employment, and to her home with her father. The paternal grandmother of her daughter E.R., who is that child's permanent managing conservator, testified she was allowing E.R. to reside with appellant in Missouri. There was testimony they will seek a court order approving that arrangement. The paternal grandmother testified favorably about E.R.'s experience living with appellant in Missouri, but testified she has not been to Missouri to observe the home herself.

There was testimony that E.R. has been diagnosed with the same medical conditions, hyperactivity and reactive attachment disorder, as those suffered by M.R., J. and M.R. Appellant testified she deals with those conditions in E.R. and can do the same with the other two children.

The caseworker also told the court appellant's last visit with her children went well and agreed appellant had passed two drug tests during 2013. The caseworker acknowledged appellant's report of sobriety for nearly a year and the completion of some counseling, an assessment, a psychological examination, and a parenting class while in prison. She also agreed appellant had been employed since February 2013.

Given the length of time these children have been in foster care, and the attachment disorders that have resulted from their lengthy period of uncertainty, the trial court well could have seen a need for permanency to be the children's primary need. The court also could have seen it to be important that the children stay together if possible. E.R. was separated from the other children by the January 2011 agreed order, when the paternal grandmother was made her permanent managing conservator and the Department was dismissed from her case. Appellant is 26 years old, and makes $1400 a month in her work at a nursing home. The parental rights of both children's fathers have been terminated. The permanence of appellant's residence with her father and stepmother was not directly addressed by the evidence. The court well could have had doubt that appellant soon would be able to assume responsibility for two, or three, additional children, despite her assurances. In sum, the evidence permitted the trial court to conclude that termination of appellant's parental rights and pursuit of the Department's plans for them give the children the best chance for permanency, and we will not second-guess the trial court's conclusion. The trial court was the judge of the credibility of the witnesses and determined the weight to be given their testimony. *In re J.J.O.,* 131 S.W.3d 632.

15

In light of all the evidence viewed in accordance with the required standards, the trial court could have reasonably formed a firm belief or conviction that termination of appellant's rights was in M.R.,J. and M.R.'s best interests. The evidence contrary to that conclusion is not so significant as to preclude such a firm belief or conviction. Accordingly, we find the evidence legally and factually sufficient to support the trial court's finding and overrule appellant's issue.

## Conclusion

Having resolved each of appellant's issues against her, we affirm the judgment of the trial court.

James T. Campbell
Justice