

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00076-CV

IN THE INTEREST OF E.X.H. AND S.M.H., CHILDREN

On Appeal from the 100th District Court
Carson County, Texas
Trial Court No. 11978, Honorable Stuart Messer, Presiding

April 4, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

J.H., father of E.X.H. (E.) and S.M.H. (S.), appeals the order terminating his rights to his children.[1]  Through four issues, J.H. contends the evidence is legally and factually insufficient to support grounds (D), (E), and (O) of § 161.001 of the Texas Family Code, and that termination is in the best interest of the children.  We affirm.

*Background*

The children were removed from M.H., the children's mother, after local authorities arrested her for money laundering and abandoning and endangering the children. The

---

[1] M.H. is the biological mother of the children involved here.  The termination of her parental rights to them was affirmed in *In re E.X.H.*, No. 07-18-00387-CV, 2019 Tex. App. LEXIS 1348 (Tex. App.—Amarillo Feb. 22, 2019, no pet. h.) (mem. op.).

charges related to her apparent participation in a scheme to transport drugs or money to purchase drugs between Arizona and Kentucky. E. (born in 2013) and S. (born in 2016) were in the vehicle as their mother drove across country as part of the scheme and at the time of the arrest. Though M.H. denied having specific knowledge of the details of the scheme, she knew it was "bad" and received $3,500 in cash as payment for her participation. Furthermore, a sum of money exceeding $10,000 was found hidden within the vehicle she drove. J.H. was incarcerated in an Arizona jail at the time of M.H.'s arrest, resulting in the children being placed in foster care.

The Department's caseworker assigned to investigate the allegations of neglectful supervision of the children confirmed that she had attempted to locate J.H. in the Arizona prison system, specifically Florence, Arizona, but was unable to locate him. Furthermore, she never received any phone calls or letters from J.H. nor any other communication regarding the children, nor did he contact or attempt to contact the children. She also confirmed that M.H. had reported a history of abusive and assaultive conduct between her and J.H. This abuse came in the form of J.H. beating her up which resulted in her leaving him. This information was given to the arresting officer at the time of her arrest when asked about why she committed the charged offenses. According to the officer, M.H. stated she needed the money due to a domestic situation she had recently been in where "her significant other had assaulted her, and she was now needing the money very bad and had been offered this line of work."

The temporary orders after the adversary hearing, which were also made part of a service plan, ordered J.H. to participate in a psychological evaluation and all recommendations made through it (which evaluation was to be scheduled within 10 days

from his release from incarceration), maintain regular contact with the caseworker including providing contact information and any changes in same, complete parenting classes, submit to a substance abuse assessment and follow all recommendations, participate in random drug testing, obtain and maintain safe, stable housing and employment and provide the caseworker with employment verification, and attend individual counseling sessions until released by the therapist. According to the caseworker, the service plan was mailed to J.H.

The caseworker stated that J.H. had been incarcerated at the beginning of the case and she did send letters, orders and the service plan to him; however, she never was contacted by him in return. At one point during the life of the case, he was released from custody. Again, he failed to contact the Department regarding his living situation, his address or whether he desired to have contact with his children. Nor did he contact the Department or the caseworker to advise he had completed, participated or started any of the court-ordered services. Therefore, she believed J.H. had not completed any court-ordered services. Furthermore, J.H's counsel advised the court that he had not had any contact with his client from inception through the final hearing.

The caseworker also opined that J.H.'s parental rights should be terminated because he knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and engaged in conduct that allowed the children to be with persons who engaged in conduct that endangered their physical or emotional well-being. The circumstances underlying this opinion included 1) J.H.'s physical violence towards their mother; 2) the presence of the children while their mother engaged in drug trafficking, 3) J.H.'s failure to complete services designed to mitigate the

reasons for removing the children; and, 4) his inability to provide the children a safe environment. So, from the witness' perspective, J.H. posed an emotional and physical danger to the children and was unable to meet their emotional and physical needs.

The CASA representative advised the court that the children were doing well in their placement with an aunt in Arizona. E. had successfully completed speech therapy and was shown to learn very quickly. S. also was doing well. Furthermore, their aunt represented that "she would do whatever it takes . . . she wants those kids." Other evidence indicated that she was gainfully employed as a branch manager of an institution that cares for disabled children and was certified to care for such children.

The trial court terminated J.H.'s rights based on Sections 161.001(b)(1)(D), 161.001(b)(1)(E), 161.001(b)(1)(F), and 161.001(b)(1)(O) of the Family Code and found termination to be in the best interests of the children.

*The Law*

Termination of parental rights requires proof by clear and convincing evidence. This heightened standard of review is mandated not only by the Family Code, *see* TEX. FAM. CODE ANN. § 161.001, but also the Due Process Clause of the United States Constitution. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (stating the due process requires the application of the clear and convincing evidence standard of proof in parental termination cases); *see also Santosky v. Kramer*, 455 U.S. 745, 769-70, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (recognizing the same). The Family Code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *see J.F.C.*, 96 S.W.3d at 264. J.H.

questions whether the Department offered such proof to support the trial court's findings underlying its decision to terminate. We overrule the issue.

Regarding the statutory grounds, the trial court found the presence of (D), (E), (F), and (O). Our review of appellant's brief revealed that he only addressed (D), (E), and (O). This is problematic since only one predicate ground for termination is needed to affirm. *See In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.). So, ground (F) suffices to warrant termination since the sufficiency of the evidence underlying it was not questioned on appeal. *See id.*; *see also In re S.L.,* 421 S.W.3d 34, 37 (Tex. App.—Waco 2013, no pet.) (stating that "[a]n unchallenged finding of a predicate violation is binding and will support the trial court's judgment, and we may affirm the termination on that finding and need not address the other grounds for termination"); *accord In re J.B.,* No. 02-18-00034-CV, 2018 Tex. App. LEXIS 5008, at *4 n.3 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.) (stating that "a failure to challenge all the grounds on which a termination is based renders attacks on those grounds that are contested moot").[2]

Regarding the best interest component, we note that the tenor of J.H.'s argument focused on his best interests, as exemplified by his allusion to the purportedly minimal effort made by the Department to help him gain possession of the children, his reliance on his un-involvement in the bad acts committed by the children's mother, his mention of his status as a prisoner in Arizona, and mentioned of his deportation to Mexico. Yet, the statutory test is not his best interests but those of the children. And, in determining what they were, we take guidance from the factors listed in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976).

---

[2] Nonetheless, our review of the entire record also leads us to conclude that the evidence supported the trial court's finding concerning statutory ground (E).

Per the *Holley* factors, we initially note that it was because J.H. engaged in criminal conduct that the children were exposed to their biological mother's own criminal endeavors; again, she purportedly engaged in drug trafficking to earn money because J.H. left her financially destitute. We also observe that the children came to live with their aunt who wants to adopt them. Furthermore, she is someone capable of caring for them, given her job and training. The children adjusted well to their environment, slept well, and maintained good appetites. One child secured the speech therapy he needed and will undergo continued monitoring.

Additionally, J.H. was prone to engaging in domestic violence, as shown by his assaulting the children's biological mother. And, while having been served with the termination petition, affidavit, removal order and hearing date, he nonetheless failed to make any contact with any persons involved in this case. Nor since his release from prison had he provided any contact information to the Department in order that he may begin services to regain the children.

These circumstances lead us to conclude that sufficient evidence supports the finding that termination of J.H.'s rights was in the best interest of the children. That, coupled with the presence of statutory grounds warranting termination, means we must affirm the judgment of the trial court. We affirm the trial courts judgment.

Per Curiam