

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00545-CV

IN THE INTEREST OF C.P., P.P. AND I.P., CHILDREN

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 80,817-E, Honorable Douglas Woodburn, Presiding

May 10, 2013

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, K.A.P., appeals from the trial court's order terminating her parental rights to her three children, C.P., P.P. and I.P.[1]  Through one issue, she contends the evidence was insufficient to support the trial court's order.  We will affirm.

Background

K.A.P. is the biological mother of C.P., P.P., and I.P.  B.P. is the father of all three children.  The children, two boys and a girl, were 9, 7, and 6 years old respectively

---

[1] We will refer to the children's mother and the children by their initials.  *See* Tex. R. App. P. 9.8.

at the time of the final hearing. In May 2011, the Department of Family and Protective Services filed its original petition, seeking relief including termination of the parental rights of both parents.

The case reached final hearing in November 2012, and the trial court signed its order of termination the next month.[2] By its order, the court made findings that K.A.P.: (1) knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; (3) failed to comply with the provisions of a court order specifying the actions needed by K.A.P. to obtain the return of the children who had been in the Department's care for longer than nine months; and (4) used a controlled substance as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the children; and failed to complete a court-ordered substance abuse treatment program; or after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance. Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O), and (P) (West 2012). The trial court also found it was in the best interests of the children for K.A.P.'s parental rights to be terminated. Tex. Fam. Code Ann. § 161.001(2) (West 2012). It is from this order that K.A.P. appeals.

---

[2] The trial court also terminated the parental rights of B.P., who had signed a voluntary relinquishment of his rights to each of his children. B.P. does not appeal the trial court's order.

Analysis

Through her sole issue on appeal, K.A.P. argues the evidence was legally and factually insufficient to support the trial court's order of termination under subsections 161.001(1)(D), 161.001(1)(E) and 161.001(2) of the Family Code. As the Department notes, K.A.P. does not challenge the sufficiency of the evidence supporting termination under subsection 161.001(1) (O) or (P).

A parental-rights termination decree must be based on a finding of at least one predicate ground and a finding that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West 2012). If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because only one is necessary for termination of parental rights. *In re T.N.F.,* 205 S.W.3d 625, 629 (Tex.App.—Waco 2006, pet. denied).

K.A.P. challenges only two of the trial court's four findings on predicate grounds for termination. Because either of the two unchallenged findings will support the order of termination, we need not address her challenge to the sufficiency of evidence supporting the predicate grounds. *In the Interest of D.S.,* 333 S.W.3d 379, 388 (Tex.App.—Amarillo 2011, no pet.).

We turn to the evidence supporting the trial court's finding termination of K.A.P.'s parental rights was in the best interests of her three children.

A strong presumption exists that a child's best interests are served by maintaining the parent-child relationship. *In the Interest of L.M.,* 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The Department has the burden to prove

3

by clear and convincing evidence that termination is in the child's best interests. *In re J.L.,* 163 S.W.3d 79, 84 (Tex. 2005).

In a legal sufficiency review in a parental rights termination case, we must look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *In re T.N.F.,* 205 S.W.3d at 630. To give appropriate deference to the factfinder's conclusions, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.F.C.,* 96 S.W.3d at 266. A reviewing court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

In conducting a factual sufficiency review, "a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* The inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *Id.* A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved the dispute in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266 (*quoting In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002)); *In re T.N.F.,* 205 S.W.3d at 630.

The primary factors to consider when evaluating whether termination is in the best interest of the child are the *Holley* factors, which include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex. 1976); *In re T.N.F.,* 205 S.W.3d at 632. The *Holley* list of factors is not exhaustive and not all the listed factors need be proved as a condition precedent to termination. *In re C.H.,* 89 S.W.3d at 27; *In re T.N.F.,* 205 S.W.3d at 632.

The children here were initially removed from K.A.P.'s care because of the parents' long history of drug abuse and mutual domestic violence. At one point, the father fired a gunshot toward the house, grazing I.P., causing minor injury. The children were returned to K.A.P. after she completed counseling, drug treatment and a service plan. But she then stopped attending counseling, stopped participating in her recovery program, and relapsed into drug use. She also injured P.P. when she threw the child into a chair. The children again were removed from K.A.P.'s care.

All three children require medication and therapy for severe behavioral problems. Witnesses testified to "fits" during which two of the children hit, scream and throw

things.[3] The children were classified as "moderate or specialized," a classification showing they required an intermediate level of care and supervision. I.P. required placement in a residential treatment facility in the summer of 2011 as a result of his extreme behavior, and remained in the facility at the time of trial.

A caseworker agreed the children's behavior following the second removal from K.A.P.'s care was "significantly worse" than after the first removal. A clinical psychologist testified he was concerned about K.A.P.'s relationship with P.P. in particular. The psychologist testified that based on his evaluation of K.A.P., she was likely to continue her past behaviors.

The children's counselor testified P.P. and I.P. were "very violent." Testimony at trial indicated all of the children require higher than normal levels of care. Two caseworkers testified K.A.P. was not capable of handling the type of care the children required and agreed K.A.P. did not have the resources to do so. The psychologist also testified K.A.P. had "limited" ability to handle her children. K.A.P.'s individual counselor testified she believed K.A.P. had a "poor prognosis" for lasting change.

A counselor also testified that P.P. was very fearful that her mother would injure her again. K.A.P. admitted at trial that her drug use may have caused some of the children's problems. K.A.P.'s counselor testified K.A.P. minimized the significance of her drug use and minimized the incidents that led to the removal of her children. K.A.P.

---

[3] C.P. had the least serious behavioral issues but also exhibited what the clinical psychologist termed parentification, meaning he acted like a surrogate parent to his younger siblings. The psychologist opined that this behavior, together with the children's other behaviors, indicated improper parenting and a "chaotic home." The children's therapist noted C.P. had "anger issues."

6

failed to complete the required 90-day treatment program after she was removed from a program for failure to follow the rules.

That evidence, coupled with the evidence of K.A.P.'s past endangering conduct, viewed in the required light, provided legally sufficient evidence that termination of her parental rights was in the best interests of the children.

The court also heard evidence that while C.P. indicated a desire to return to his mother, P.P. and I.P. expressed a desire not to do so. The record indicates that at times P.P. did not want to attend visits with her mother.

There is evidence contrary to the trial court's best interest finding, including evidence K.A.P. attended scheduled visits with her children, expressed a desire to have her children returned to her, completed many of the services required of her by the Department, was employed and had an apartment, remained drug-free and actively participated in Narcotics Anonymous during the months before trial.[4] However, we give deference to the trial court's weighing of the evidence. The trial court reasonably could have viewed that evidence as weakened by the evidence, also undisputed, that K.A.P. had remained drug-free for a time when the children were first removed from her care, but relapsed after they were returned. And, in any event, we conclude that the evidence K.A.P.'s lifestyle stabilized and improved during the months leading up to trial, though undisputed, is not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the children's best interests. *In re J.F.C.,*

---

[4] At the final hearing, the children's attorney ad litem only reluctantly argued for termination.

7

96 S.W.3d at 266; *see In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009) ("evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices").

As noted, at the time of trial, one of the boys had been residing for several months in a residential treatment facility, made necessary by his volatile behavior. The girl and the older boy reside in different places. P.P. is in a foster home while C.P. remains in a group home. The court heard testimony that all three will require counseling and treatment for "some time in the future." The evidence permitted the court to reach a firm conclusion that K.A.P., despite her improved stability, was unlikely to be able to provide the kind of care these children require. And, so long as their conservatorship remained undecided, the resulting uncertainty and instability hindered their progress toward emotional well-being. The evidence that termination of K.A.P.'s parental rights was in the best interests of the children also was factually sufficient.

## Conclusion

In sum, we find that legally and factually sufficient evidence supported a conclusion termination is in C.P., P.P., and I.P.'s best interests. We overrule K.A.P.'s sole issue on appeal and affirm the judgment of the trial court.

James T. Campbell
Justice