**Opinion filed August 1, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00070-CV

_____

## IN THE INTEREST OF C.R.B., A CHILD

**On Appeal from the 132nd District Court**

**Scurry County, Texas**

**Trial Court Cause No. 24021**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order terminating the parental rights of both the mother and the father of C.R.B.[1]  The mother has filed a notice of appeal from the termination order.  We affirm.

---

[1]The trial court entered an interlocutory order terminating the father's rights.  That order became a final judgment for appellate purposes when the trial court entered its final order of termination in this case.

The mother presents two issues for review. In those issues, she asserts that the evidence is legally and factually insufficient to support the finding that termination is in the best interest of the child.

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. In this case, the trial court found that the mother committed three of the acts listed in Section 161.001(1). The trial court found that the mother had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, that the mother had constructively abandoned the child, and that the mother had failed to comply with the provisions of a court order stating the actions necessary for her to obtain the return of the child. *See id.* § 161.001(1)(E), (N), (O). The mother does not challenge the findings made pursuant to Section 161.001(1). Any of these unchallenged findings was sufficient to support termination as long as termination was shown to be in the child's best interest. *See id.* § 161.001. The trial court also found that termination was in the child's best interest. *See id.* § 161.001(2).

2

The question before us is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266. A trier of fact may measure a parent's future conduct by his or her past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

The record shows that the Texas Department of Family and Protective Services removed C.R.B. from the mother's care in January 2010. The Department filed a petition in February 2010 in Dawson County to terminate the mother's parental rights to C.R.B. After a trial, the trial court entered an order terminating the mother's parental rights. The mother appealed to this court. On appeal, the parties filed an agreed emergency motion to dismiss the appeal on the ground that the trial court in Dawson County had lacked subject-matter jurisdiction over the case. In the emergency motion, the parties agreed that the underlying order of

3

termination was void *ab initio* and that there was no final, appealable order for this court to review. Pursuant to the parties' request, we dismissed the appeal in July 2011. *See In re C.R.B.*, No. 11-11-00125-CV, 2011 WL 2731292 (Tex. App.—Eastland July 12, 2011, no pet.) (mem. op., not designated for publication). Following the dismissal, the Department filed a new petition in Scurry County to terminate the mother's parental rights to C.R.B.

On January 4, 2013, the trial court held the final hearing, a bench trial, in this case. The mother failed to appear at trial. She was, however, represented by counsel. The record shows that C.R.B. was ten years old at the time of trial. He had been in foster care for half of his life. The Department removed him from the mother's care when he was four years old. C.R.B. was returned to the mother's care when he was six years old. The Department again removed C.R.B. from the mother's care in January 2010, when he was seven years old. The Department placed C.R.B. in foster care, and he remained in foster care at the time of trial.

C.R.B. had been in therapy since July 2012. C.R.B.'s therapist, Robert Mahoney, testified that, as a result of C.R.B.'s childhood experiences, C.R.B. is an emotionally disturbed child. Mahoney said that C.R.B. is much more intense, aggressive, and defiant than a normal ten-year-old. C.R.B.'s behavior issues are being addressed in the therapy. Mahoney testified that C.R.B. has "bad memories" about living with the mother. C.R.B. told Mahoney that the mother used drugs. C.R.B. also told Mahoney that, when he lived with the mother, he had to fend for himself because she had not been there to take care of him. Mahoney described C.R.B.'s home environment with the mother as "chaotic" and "unstable." C.R.B. believed that his mother abandoned him. Mahoney said that, in the past, the mother had given C.R.B. "false hope" that things would change. Mahoney explained that "[the mother] says she's going to do something and she doesn't. She doesn't follow through, and it just keeps reinforcing that feeling of

4

abandonment in his eyes." Mahoney said that the mother had not shown any interest in C.R.B. in more than a year. Since Mahoney started seeing C.R.B., the mother had not seen C.R.B, talked to C.R.B. on the telephone, or sent C.R.B. any letters. Mahoney said that, while C.R.B. has said that he wanted to live with the mother again, C.R.B. feared that things would be the same as they were before and that his mother was probably still using drugs.

Mahoney testified that the mother's actions and her failure to be involved in C.R.B.'s life emotionally damaged C.R.B. Mahoney believed that C.R.B. is adoptable and, if adopted, would thrive in the adoptive home. Mahoney testified that C.R.B. needed permanency in his life and that it was in C.R.B.'s best interest for the mother's parental rights to be terminated so that C.R.B. could hopefully obtain that permanency. Mahoney believed that, if the mother's rights were not terminated, C.R.B. would be stuck in foster care until he became an adult.

The mother testified at the permanency review hearing that was held on March 7, 2012. At trial, her testimony from the earlier hearing was admitted into evidence. At the hearing, the mother testified that she began using drugs when she was fifteen years old. At some point, she started using crack cocaine. She said that, as a result of her cocaine use, she spent seven months in drug rehabilitation in Lubbock. She said that she became "clean and sober" but that she started using methamphetamine in February 2010, after C.R.B. was removed from her care. The mother said that she was addicted to methamphetamine. In February 2012, she went into rehab for treatment related to her methamphetamine use. She got out of treatment four days before she testified at the permanency review hearing. The mother testified that she had not seen C.R.B. since Christmas in 2011.

The Department presented evidence that the mother had three misdemeanor convictions. The evidence showed that, on April 13, 2010, the mother pleaded guilty to, and was convicted of, a misdemeanor offense of burglary of a vehicle.

On November 29, 2011, the mother pleaded guilty to, and was convicted of, a misdemeanor offense of possession of marihuana. On the same day, the mother pleaded guilty to, and was convicted of, a misdemeanor offense of stealing or receiving a stolen check. The evidence also showed that the mother was incarcerated four separate times in 2012.

In November 2011, the trial court ordered the mother to complete various services as part of her family service plan. In part, the plan required the mother to participate in a drug and alcohol assessment and to follow all recommendations that resulted from the assessment, to complete a psychological examination and to follow all recommendations that resulted from the evaluation, to complete individual counseling, and to participate in parenting classes. The record shows that the mother did not comply with numerous provisions of her service plan. Department caseworkers offered the mother services, repeatedly scheduled appointments for the mother to obtain services, and informed the mother about the appointments. However, the mother repeatedly failed to attend the appointments.

Robert Walker, a caseworker for Child Protective Services, was assigned to this case in April 2012. Earlier, another caseworker was assigned to the case. Walker testified that, in April 2012, the Department did not know the mother's whereabouts. Walker first heard from the mother in June 2012, after she was released from one of her incarcerations. The mother told Walker on this occasion, and on later occasions, that she wanted to complete the services required in her service plan. Walker scheduled a drug and alcohol assessment for the mother, but she did not attend the appointment. Walker next heard from the mother when she was incarcerated again in August 2012. She completed a psychological evaluation while in jail. The mother was released from jail on August 8, 2012. In September 2012, the mother completed a drug and alcohol assessment. The counselor who performed the assessment recommended that the mother participate in outpatient

6

substance abuse counseling. Walker scheduled an appointment for counseling, but the mother failed to attend the appointment. As of the date of trial, the mother had not received any outpatient substance abuse counseling. The mother also did not participate in the individual counseling required in the service plan, although Department caseworkers scheduled counseling appointments for her. Nor did the mother complete the parenting classes required in the service plan.

Walker testified that, since he became the caseworker in April 2012, the mother had neither contacted C.R.B. nor made any attempts to contact him. Walker told the mother that he would forward letters to C.R.B. for her. Walker said that the mother did not bring him any letters to give to C.R.B. Mahoney and Walker offered the mother the opportunity to participate, by telephone, in therapy sessions with C.R.B. Walker told the mother that she could participate in the phone sessions by coming to his office. However, the mother failed to show up at his office for any sessions.

The evidence showed that the mother had not maintained a stable home environment for herself. Walker testified that the mother did not have the ability to provide the child a safe and stable household. As stated above, the mother does not challenge the trial court's constructive abandonment findings, including the finding that she had demonstrated an inability to provide C.R.B. with a safe environment. Walker believed that it was in C.R.B.'s best interest for the mother's parental rights to be terminated so that C.R.B. would have the opportunity to be adopted and the opportunity to have permanency in his life.

Considering the evidence in light of the *Holley* factors, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or conviction that it would be in C.R.B.'s best interest for the mother's parental rights to be

terminated. The evidence is both legally and factually sufficient to support the best interest finding. We overrule the mother's first and second issues.

We affirm the trial court's order of termination.


TERRY McCALL

JUSTICE


August 1, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.