

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-13-00406-CV

**IN THE INTEREST OF C.M.**, A.U.A., C.A.G., and J.A.M.

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-PA-01521
Honorable Dick Alcala, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:          Sandee Bryan Marion, Justice
                  Rebeca C. Martinez, Justice
                  Luz Elena D. Chapa, Justice

Delivered and Filed:  October 2, 2013

AFFIRMED

This is an appeal from the trial court's order terminating appellant's parental rights to her four children. At the time of the termination hearing, appellant's four children, C.M., A.U.A., C.A.G., and J.A.M., were thirteen, nine, eight, and five years old respectively. The trial court terminated appellant's parental rights on the grounds that she failed to comply with a court order that specifically established the actions necessary for her to obtain the return of the children and she used a controlled substance, and termination was in the children's best interest. On appeal, appellant only challenges the legal and factual sufficiency of the evidence in support of the best interest finding.

**DISCUSSION**

To terminate parental rights under the Family Code, the State must prove by clear and convincing evidence that (1) the parent has committed an act or omission listed in section 161.001 and (2) termination is in the child's best interest. TEX. FAM. CODE § 161.001(1), (2) (West Supp. 2012). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008); *see also In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether termination of parental rights is in a child's best interest, courts may apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.*

On appeal, appellant asserts the evidence is legally and factually insufficient to support the trial court's finding that termination was in the children's best interest for the following reasons: (1) C.G. and J.M. both expressed the desire to continue to see their mother, the children's therapist testified the children love their mother, and the therapist could not recommend either reunification or termination; (2) when the children were removed from their mother in June 2011, they were not ill, malnourished, or physically abused, and there is no evidence showing appellant was unwilling

or unable to provide for her children's educational, medical, physical, or emotional needs; (3) there is no evidence suggesting the children would be in physical or emotional danger if they were returned to appellant now or in the future; (4) during the pendency of the suit, appellant had numerous visits with the children, did well and was appropriate during the visits, and brought snacks and other things for the children; (5) appellant successfully completed parenting classes, anger management classes, an empowerment class, and domestic violence classes; (6) the Texas Department of Family and Protective Services ("the Department") failed to specify any long term plans for the children; (7) appellant maintained stable housing and employment during the pendency of the case; and (8) by November 26, 2012, appellant had demonstrated enough progress that all parties agreed the children would be returned to their mother; however, one day later, the Department changed its position based on a hair follicle test that suggested appellant was using amphetamines.

On appeal, the State does not dispute the absence of evidence favoring termination on almost all of the *Holley* factors. But, the Supreme Court has "never held that these considerations are exhaustive, or that *all* such considerations must be proved as a condition precedent to parental termination." *In re C.H.*, 89 S.W.3d at 27. "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* Also, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *Id.* at 28 (holding same evidence may be probative of both section 161.001(1) grounds and best interest). A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). A trier of fact

may measure a parent's future conduct by her past conduct and determine whether termination of parental rights is in the child's best interest. *Id.*

Kristen Quinones, the Department's removing investigator, testified appellant tested positive for methamphetamines and amphetamines on May 29, 2011, which is the date the Department sought legal removal of the children from appellant's home. Because appellant refuted the results of this test, a hair follicle test was conducted in early July 2011, the results of which also revealed the use of methamphetamine. Monica Tobias, a CPS worker, testified she reviewed the service plan with appellant, which included, among other things, requirements that appellant make progress in individual counseling and compete drug and alcohol treatment. Tobias said appellant has not done either, and appellant also failed to refrain from drug use.

Tobias said she drug-tested appellant the day of the sixty-day hearing in August 2011, and appellant tested positive for methamphetamine. Appellant also tested positive on April 27, 2012; June 11, 2012; December 3, 2012, and January 3, 2013. In November 2012, all parties agreed to a monitored return of the children to appellant; however, when the December 3 results came back positive, the Department prevented the children's return.

Tobias said appellant disputed the December 3 test results, contending her medication caused a false positive. Tobias confirmed none of the drugs appellant said she was taking would have caused a false-positive result. On May 17, 2013, a few days before the termination hearing, Tobias thought appellant might be under the influence of drugs, but appellant walked away and refused to talk. When asked why she believed termination was in the children's best interest, Tobias responded that appellant has not shown successful drug rehabilitation, she has tested positive throughout the case on at least seven drug tests, she has not completed individual counseling, and she is adamant that the allegations against her are false, and she blames others for her children's removal. According to Tobias, appellant claimed she could not get into a drug

program "because she was not a drug user, and that she had to use drugs in order to get into drug treatment, to get her kids back." Tobias said the children's therapist was not in favor of reunification.

The first of appellant's therapists, Dr. Augustine Sicard, said he saw appellant for about twenty-seven sessions over six to eight months in 2012. He testified appellant was impatient, aggressive, and manipulative. Sicard said that because he was not making progress with appellant after twenty-seven sessions, he requested she be referred to counseling with another therapist. Sicard explained the lack of progress was due to appellant's belief that "this was a CPS plan to hurt her and that they set some things in motion . . . to prevent her from getting the children back." Sicard also said appellant "became very obsessed" with Tobias, and was convinced Tobias organized taking the children away and that she [appellant] "has done absolutely no wrong." He stated that when he approached the topic of substance abuse, appellant became very resistant and accused CPS of making her take drugs so that she could get therapy, and then CPS used the drug test results against her. He said appellant also thought that her son's hospitalization at Laurel Ridge Hospital was part of a plan to hurt her and the children. He believed appellant would need therapy "forever." Sicard also testified appellant never saw herself as part of the problem. He hoped that assigning appellant to another therapist might prove more successful. It did not.

Appellant's next therapist, Dr. Ruth Bujanda-Moore, testified she had just four sessions with appellant, and appellant missed four other appointments. Bujanda-Moore also said appellant blamed CPS and appellant did not believe it was her own fault the children were taken away and all the CPS documentation was false. Bujanda-Moore could not, as of the termination hearing, recommend reunification because she could not ascertain whether appellant was a danger to the children.

Marina Montez, the children's counselor, said her recommendation on reunification depended on whether appellant had negative drug tests or some proof of rehabilitation. Montez would not recommend reunification if appellant's drug tests were positive.

Appellant also testified. She said she realized she could not get into any drug class unless she was a drug addict and, therefore, she used methamphetamine to get into the drug treatment center. Appellant said she stopped therapy because she felt "that was misusing state funding on something that [she] was never going to admit to."

After hearing all the evidence, the trial court concluded termination of appellant's parental rights was in the children's best interest.

## CONCLUSION

Based on our review of the record, we conclude the trial court did not abuse its discretion in finding by clear and convincing evidence that termination of appellant's parental rights is in the children's best interest. Therefore, we overrule appellant's issue on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice