

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00293-CV

IN THE INTEREST OF J.D.H., E.K.H., Z.H.H., CHILDREN

On Appeal from the 100th District Court
Donley County, Texas
Trial Court No. 6931, Honorable Stuart Messer, Presiding

February 20, 2014

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

This is an accelerated appeal involving the termination of the parental rights of the parents, Andrea and John, to J.D.H., E.K.H., and Z.H.H. Each parent is represented by their own counsel who has filed a brief with the Court. The trial court terminated Andrea's parental rights pursuant to the Texas Family Code sections 161.001(1)(E) and (O). *See* TEX. FAM. CODE ANN. § 161.001(1)(E), (O) (West Supp. 2013).[1] The trial court terminated John's parental rights pursuant to sections 161.001(1)(C), (D), (E), (F), (N), and (O). *See* § 161.001(1)(C), (D), (E), (F), (N), (O).

---

[1] Further reference to the Texas Family Code will be by reference to "section ____" or "§ ____."

Further, the trial court found that termination of each parent's parental rights was in the best interest of the children. *See* § 161.001(2).

Andrea perfected her appeal and presents three issues. She contends in her second and third issues that the evidence was insufficient to support the trial court's predicate findings by clear and convincing evidence. Further, Andrea contends in her first issue that the evidence was insufficient to support the trial court's finding that termination of her parental rights was in the best interest of the children.

John perfected his appeal and presents the Court with two issues. John's first issue contends that the trial court committed error in entering an order for substituted service on John. John's second issue contends that, because John's parental interest were not terminated in the first suit filed by the Texas Department of Family and Protective Services, that the trial court erred in terminating his parental rights because there was no material and substantial change in circumstances since the first denial of termination.

Disagreeing with both Andrea and John, we will affirm.

Factual and Procedural Background

The Department initially filed a case seeking to terminate Andrea's and John's parental rights in 2010. The stated reason for termination was the use of drugs in the home. John had little or no contact with the Department during the first case and never signed a parenting plan nor attempted to complete any of the requirements of the Department's plan. Because Andrea worked diligently at her services, the children were ultimately returned to her and the case was dismissed in January 2012. At the time of

the dismissal, the case against John was also dismissed.  However, the 2012 order denied John the appointment as possessory conservator and, further, denied John possession and access to the children.

Subsequently, in February 2012, the Department's investigator received a report that Andrea was giving marijuana to J.D.H.  During an interview regarding this report, Andrea submitted to an oral drug screen which was positive for methamphetamine.  When confronted with the test results, Andrea admitted that she had used methamphetamine.  Because of Andrea's drug use, the children were again removed from the home.

During the Department's investigation, Andrea reported to the investigator that following the children's return to the home in January, John had stayed at the home for a few days.  At trial, the Department's caseworker, Jessica Lepe, testified Andrea admitted that, during the time John was back in the home, she and he used drugs together.  Additionally, from Andrea the investigator learned that John had physically assaulted Andrea.  From the record, it is not clear whether the acts of physical violence occurred before or during John's last appearance in the home.  However, John's acts of physical violence toward Andrea were documented in separate interviews by Lepe with both Andrea and the children.  The children reported that they were afraid of John.

During both the initial case and the new case, Andrea was required to obtain a psychological evaluation.  Dr. William Hoke performed each evaluation.  At the time Dr. Hoke saw Andrea in connection with the second case, she was living in the Walker House in a drug and alcohol program.  However, according to the testimony, Andrea left

the Walker House program without completing all portions of the program. In connection with the second psychological assessment, Dr. Hoke testified that the results revealed that Andrea was amphetamine dependent, a marijuana abuser, and suffered from adult antisocial behavior, brief psychotic disorder, depressive disorder, and personality disorder borderline with antisocial and paranoid features. Dr. Hoke's recommendation included individual counseling, completion of drug treatment sobriety, a 12-step program. If Andrea did not make the required changes, Dr. Hoke saw little chance the children could be returned to her due to the significant danger that exposure to a drug lifestyle posed.

After the second removal, the Department made arrangements for Andrea to receive ten individual counseling sessions with Sonya Higgins, a licensed professional counselor. Higgins testified that Andrea attended only four of the sessions, two in February 2013 and two in April 2013. Further, Higgins opined that Andrea overcame none of the problems that caused the need for individual counseling and did not make sufficient progress for the children to be returned to her.

In addition to not completing the tasks and recommendations of Dr. Hoke, Andrea failed to complete her service plan. Specifically, the record demonstrates that Andrea failed to complete her individual counseling, did not complete the recommendations from her drug and alcohol assessment that she attend Alcoholics Anonymous/Narcotics Anonymous (AA/NA).

The children's therapist, Stephen Jennings, testified regarding his observations of the children and the effect that return of the children to Andrea would have on them.

4

His testimony may be summed up that, since Andrea did not follow through with her individual therapy, AA/NA, and drug treatment, she could not provide the children with a safe home. He observed that to return the children to her would result in the regression of the children into the chaotic life they had known before.

Regarding John, the testimony was that the caseworker, Lepe, was never able to make personal contact with John. In fact, the trial court signed an order for substituted service pursuant to Texas Rules of Civil Procedure 103 and 106(b)(1). *See* TEX. R. CIV. P. 103, 106(b)(1).[2] In this case, the trial court designated that service be left with John's mother.

The record demonstrates that, during the pendency of this second action, John was never present in the home and never offered any support for the children. The only time John was present in the home was after the first case concluded and he was there against the express orders of the trial court that he have no possession or access to the children. The Department presented evidence that a service plan was created for John; however, since John had no contact with the Department, it was mailed to his mother who had advised the Department that she would get his mail to him.

At the conclusion of the evidence, the trial court found that the Department had proven the predicate acts alleged "beyond a reasonable doubt"[3] and that it would be in

---

[2] Further reference to the Texas Rules of Civil Procedure will be by reference to "Rule ____."

[3] We construe the trial court's findings as meaning that the trial court found the evidence sufficient under the clear and convincing degree of proof standard defined by section 101.007.

the best interest of the children that both Andrea's and John's parental rights be terminated. It is from this order that both parents appeal.

## Standard of Review

The natural right existing between parents and their children is of constitutional dimensions. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. That being so, we are required to strictly scrutinize termination proceedings. *In re G.M.,* 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes (1) one or more acts or omissions enumerated under section 161.001(1), and (2) that termination of the parent-child relationship is in the best interest of the child. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient

evidence supports any one of the grounds found in the termination order, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. *See id.*

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see* § 161.206(a) (West 2008). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2008). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. *In re C.H.,* 89 S.W.3d at 26.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. *See In re J.F.C.,* 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.,* 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Andrea's Termination

Predicate Acts of Andrea

The allegations regarding Andrea were that she engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical and emotional well-being of the children. § 161.001(1)(E). Additionally, the Department alleged that Andrea failed to comply with the provisions of the court order that specifically established the actions necessary for her to obtain the return of the children who have been in the temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal under Chapter 262 for abuse or neglect. *See* § 161.001(1)(O).

Remembering that only one statutory ground is required to terminate parental rights under section 161.001, we will address the proof of the predicate act pursuant to section 161.001(1)(O). *In re A.V.,* 113 S.W.3d at 362. Initially, we observe that a claim

8

of substantial compliance with a court order does not defeat a termination based upon subsection (O). *See In re I.G.,* 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.). We will review the applicable facts accordingly.

The record demonstrates that Andrea was provided with the family service plan that she was required to complete in order to have the children returned to her. Further, Andrea does not contest that she signed the family service plan and, thereby, acknowledged that she understood the requirements. Finally, no one is contesting that the plan was approved by the trial court and entered as an order of that court.

Analysis

The record demonstrates that Andrea was ordered to obtain a psychological evaluation from Dr. Hoke. Dr. Hoke, based upon that evaluation, recommended that Andrea have individual counseling. Pursuant to this recommendation, the Department entered into an agreement with Higgins to provide ten sessions of individual counseling to Andrea. However, Andrea only attended four sessions over a three-month period. Additionally, Dr. Hoke recommended that Andrea complete alcohol and drug counseling. As part of this recommendation, Andrea was to attend AA/NA meetings and to provide proof of attendance. Andrea ceased providing proof of attendance at AA/NA after February 2013. Under the record before this Court, when we view the evidence in the light most favorable to the trial court's ruling, the evidence is legally sufficient to produce a firm conviction or belief in the mind of the factfinder that the allegation that Andrea failed to complete her court-ordered services is true. *See In re J.F.C.,* 96 S.W.3d at 266.

When we review the evidence from the perspective of factual sufficiency, we are convinced the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegation. *See In re C.H.,* 89 S.W.3d at 25. There is contained in the record before this Court no disputed evidence that would result in a different result. Accordingly, Andrea's issue challenging the evidence to support the legal and factual sufficiency of the evidence to prove the subsection (O) allegation is overruled. Because we need find only one predicate act to support the trial court's order regarding termination, we do not address the evidence to support the subsection (E) allegation. *See In re A.V.,* 113 S.W.3d at 362.

## Best Interests of the Children

There is a strong presumption that a child's interest is best served by preserving the conservatorship of the parents; however, clear and convincing evidence to the contrary may overcome that presumption. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best interest of the child: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d

367, 371–72 (Tex. 1976); *see also* § 263.307 (West 2008) (providing extensive list of factors that may be considered in determining child's best interest). In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission. *See In re C.H.*, 89 S.W.3d at 28. The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.).

The Department need not prove all nine *Holley* factors, and the absence of evidence relevant to some of those factors does not bar a finding that termination is in the child's best interest, especially in the face of undisputed evidence that the parental relationship endangered the child. *See In re C.H.*, 89 S.W.3d at 27. No one *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In re A.P.,* 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.) The evidence supporting the predicate grounds for termination may also be used to support a finding that the best interest of the children warrants termination of the parent-child relationship. *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.).

Analysis of Best Interests Factors[4]

In order to properly analyze the best interest of the children, we should review the factual background of the case. In addressing this factual background, we need also to remember that the trial court's removal of the children from Andrea's care in

---

[4] We note that John has not challenged the evidence to support the trial court's finding that it is in the best interest of the children to terminate his parental rights.

11

February 2012 was the second removal of these children. The children were returned to Andrea in January 2012 after she had made significant progress in addressing her drug issues and her parenting abilities. Yet, within a 30-day span the Department felt compelled to go back and, for the safety of the children, remove them from Andrea's care.

The initial impetus for the second removal was a report that, not only was Andrea using drugs, but she was also offering them to J.D.H. This allegation was not proved; however, the investigation spawned by the allegation revealed that Andrea had returned to her practice of using methamphetamine while the children were in the home. Further, the record details that the children were living in a chaotic environment where there was little parental control offered or accepted.

The testimony of the Home Life Supervisor from Presbyterian Children's Home, Kimber Thomas, was very demonstrative regarding the effect the children's home life was having on them. Thomas recounted that all three of the children were defiant when they first arrived at Presbyterian. Further, each of them was aggressive toward other children and the staff. In fact, the two older children had to be removed from Presbyterian and sent to a secure and more structured environment. During the period that the children were at Presbyterian, Thomas noted that, after each visit with Andrea, the children, each of them, would become more aggressive and less responsive to control.

Jennings, the children's counselor, testified that he held some visitation events with the children and Andrea. In describing the visitation sessions, Jennings used the

terms chaotic and unstructured. Further, Jennings opined that Andrea seemed to lack the ability or willingness to do much with the children's conduct. Jennings observations were, for the most part, a result of the first intervention by the Department because, although Andrea was ordered to return for further family therapy after the children were returned to her, she failed to do so.

Higgins, Andrea's counselor, was appointed to counsel Andrea in the second case. Andrea was to have attended ten sessions of personal counseling but only attended four. Based on Higgins's dealings with Andrea in those four sessions, Higgins opined that Andrea could not establish and maintain a safe environment. Further, Higgins stated that in the short time she dealt with Andrea, Andrea had not made any progress on the underlying problems and issues. As a result of these opinions, Higgins felt that the best interest of the children would be served by termination of Andrea's parental rights.

In describing Andrea, the psychologist, Dr. Hoke, described her as defensive and unwilling to take responsibility for any of the problems that she had. One of the tests administered to Andrea resulted in her being classified as a psychopathic deviate. According to Hoke, this means that Andrea has really strong antisocial tendencies, is very impulsive, has difficulty in accepting responsibility, and will generally seek to get her own needs met first. As more directly on point, Hoke testified that Andrea would have a very difficult time putting her children's needs before her desires. Additionally, Hoke characterized these personality characteristics as very difficult to change. We will now apply the evidence to some of the *Holley* factors.

Desires of the Children

While there is not direct evidence that the children do or do not want to return to their mother, there was some testimony that sheds some light on this issue. The children's therapist, Jennings, testified that the day before the hearing there was a phone visit amongst the children. During this conversation the children expressed knowledge that Andrea could not care for them and that they were pretty resolved to this situation. Insofar as it is indicative of the children's desires, this evidence would tend to demonstrate that the children have no desire to return to their mother and would therefore weigh in favor of the trial court's decision.

The Emotional and Physical Needs of the Children Now and in the Future
The Emotional and Physical Danger to the Children Now and in the Future

The evidence supporting the predicate grounds for termination may also be used to support a finding that the best interest of the children warrants termination of the parent-child relationship. *In re D.S.*, 333 S.W.3d at 384. Further, evidence of past deeds of misconduct or neglect may foretell a parent's future conduct. *Id.* The factfinder may infer that a parent's past conduct of endangering the well-being of the children may recur in the future if the children are returned. *In re D.L.N.,* 958 S.W.2d 934, 934 (Tex. App.—Waco 1997, pet. denied). In fact, a parent's abuse of drugs while having custody of children supports termination under § 161.001(1)(E). *See In re J.O.A.,* 283 S.W.3d 336, 345 (Tex. 2009). This evidence strongly supports the trial court's decision that termination is in the best interest of the children.

The Parenting Ability of the Individuals Seeking Custody

The Programs Available to Assist the Party Seeking Custody

The record before us indicates that Andrea's home could best be described as chaotic. Even when Andrea was visiting the children in a supervised visitation surrounding, her ability to parent the children was described as chaotic. That Andrea knew what steps would be required to demonstrate her ability as a parent was readily demonstrated by the fact that, in the initial removal of the children from the home, Andrea successfully completed the Department's plan of services and had the children placed back into the home. But the most troubling evidence regarding Andrea's ability to parent these children was the psychological testimony of Hoke. Hoke testified that Andrea would have a very difficult time putting the needs of the children before her own desires and, further, that such a behavior is extremely hard to overcome. Finally, Andrea was offered ten sessions of individual counseling, during which she could have worked on these issues, yet she only attended four sessions. Failure to avail oneself of the programs offered in the past can be used to infer that the parent lacks the ability to motivate herself to improve in the future. *In re W.E.C.,* 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.). All of this evidence and the reasonable inferences that might be derived from the evidence strongly support the trial court's decision that termination is in the best interest of the children.

Plans for the children

Suffice it to point out that Andrea did not show up for trial, had not paid any support for the children, and, in the period immediately before the final hearing, had

minimal contact with the children. These facts strongly support the trial court's decision regarding the best interest of the children.

From a review of these *Holley* factors, it is clear that the trial court had sufficient testimony and facts before it upon which to find by clear and convincing evidence that termination was in the best interests of the children. *In re J.F.C.,* 96 S.W.3d at 266. Accordingly, Andrea's issue to the contrary is overruled.

John's Termination

Substituted Service on John

John's first issue contends that the order for substituted service on John was issued in error because the service was ordered left with John's mother. Under John's theory, the error was that service was left with a person who was interested in the outcome of the case. To support this argument, John cites the Court to Texas Rule of Civil Procedure 103. *See* Rule 103. Rule 103 describes who may serve "Process—including citation and other notices, writs, order, and other papers issued by the court." *Id.* The rule then describes three categories of individuals who may serve process. After this list, the rule states, "But no person who is a party or interested in the outcome of a suit may serve any process in that suit." *Id.* A review of the record clearly demonstrates that John's mother did not serve any process on herself or any other person. Whether she was a party interested in the outcome of the suit at the time she was served with substituted service on John is a matter open for discussion. However, that is not John's issue. John has simply misread the rule, and his position finds no support in the law. Accordingly, John's first issue is overruled.

During oral arguments John's attorney signaled intent to abandon the issue described above. From that point, John's counsel started arguing that the trial court lacked personal jurisdiction over John because of defective substituted service. Subsequently, John filed a motion to file a "Supplemental Brief" and, in fact, submitted the proposed supplemental brief to the Court. After receiving the motion and proposed brief, this Court requested a response to the motion from the Department. The Department submitted a response which essentially argued that the Court should deny the motion because John was, in fact, filing a "Reply Brief" that attempted to raise an issue not previously presented to the Court in contravention of Rule 38.3 of the Texas Rules of Appellate Procedure and cases construing that rule. *See* TEX. R. APP. P. 38.3; *see also Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 72 (Tex. App.—San Antonio 2011, no pet.) (holding issues raised for the first time in reply brief may not be considered, except in exceptional cases); *Fox v. City of El Paso*, 292 S.W. 247, 249 (Tex. App.—El Paso 2009, pet. denied). In this case, John has presented the Court with no exceptional circumstances, and John has not even averred this was an issue that could not have been raised on original submission. Accordingly, we have denied the motion to supplement.[5]

---

[5] Were we to allow the "supplemental brief" to be considered it would be of no avail to John because, on this issue of personal jurisdiction, the facts reflect that a valid order for substituted service was entered. Had counsel for John wished to contest this issue, the proper vehicle would have been by a special appearance through Rule 120a. Counsel did not avail himself of this and, in fact, participated throughout the trial by questioning witnesses and, finally, by making a final argument to the trial court. These actions established the trial court's personal jurisdiction over John. *See In re P.Y.M.*, No. 04-13-00024-CV, 2013 Tex. App. LEXIS 9803, at *7 (Tex. App.—San Antonio Aug. 7, 2013, pet. denied) (mem. op.)

Change of Circumstances

John's second issue contends that there was no material and substantial change in circumstances since the denial of the Department's request to terminate John's parental rights in the first action. The Department counters that John is misconstruing the statute when he argues that the change in circumstance is related only to him. For purposes of this opinion only, we will assume without deciding that the facts of this case are governed by section 161.004(a). *See* § 161.004(a) (West 2008).

Section 161.004 provides in part as follows:

> (a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:
>
> (1) the petition under this section is filed after the order denying termination was rendered;
>
> (2) the circumstances of the child, parent, sole-managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered; . . . .

§ 161.004(a)(1), (2).

From the language of the statute, it is clear that a material and substantial change of any affected party will be sufficient for the purposes of proceeding forward in the termination. Under the facts presented in this case, Andrea relapsed into methamphetamine use after the children were returned to her. This would be more than sufficient. *See In re N.R.T.*, 338 S.W.3d at 679. Further, there was the additional factor of John moving back into the home after the trial court's order of dismissal held that he

18

was to have no possessory interest or access to the children. Either of these events would provide the requisite "material and substantial change" under section 161.004. Accordingly, John's second issue is overruled.

Conclusion

Having overruled the issues presented by Andrea and John, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Pirtle, J., concurring and dissenting.