**Opinion filed April 11, 2024**



# In The

# Eleventh Court of Appeals

_____

## No. 11-23-00248-CV

_____

## IN THE INTEREST OF Z.B., J.B., AND S.B., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10792-CX**

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and fathers to three children—Z.B., J.B., and S.B.[1] *See* TEX. FAM. CODE ANN. §§ 161.001, .002 (West 2022 & Supp. 2023). The

---

[1]The father of Z.B. executed an affidavit of voluntary relinquishment of his parental rights pursuant to Section 161.001(b)(1)(K) of the Texas Family Code, and the trial court terminated his parental rights based on subsection (K) and determined that termination was in the best interest of Z.B. Additionally, the trial court terminated the parental rights of both the alleged father of J.B. and S.B., as well as the unknown father of J.B. and S.B. The trial court terminated the parental rights of the alleged father of J.B. and S.B. based on Sections 161.002(b)(2)(B), (e) and the best interest of the children. The trial court terminated the parental rights of the unknown father of J.B. and S.B. based on Sections 161.002(b)(3), (e) and the best interest of the children. Only the mother appealed.

mother, Appellant, filed a notice of appeal. In three issues, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings that termination of her parental rights was in the best interest of each of the three children. We affirm.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. FAM. §§ 161.001(b), 161.206(a), (a-1). To terminate one's parental rights under Section 161.001, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U)[2] and that termination is in the best interest of the child or children. *Id.* at 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (E) and (O). The trial court also found that termination of Appellant's parental rights would be in the best interest of the children. *See id.* §§ 161.001(b)(2), 161.003(a)(5).

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022);

---

[2]We note that the legislature recently amended Section 161.001 to include additional requirements for trial courts in termination suits filed by the Department of Family and Protective Services (the Department) and a new ground for termination that relates to convictions for solicitation of a minor; however, these amendments only apply to suits filed on or after September 1, 2023. Act of May 26, 2023, 88th Leg., R.S., ch. 728, §§ 1, 3, 2023 Tex. Sess. Law Serv. 1770, 2177 (codified at FAM. § 161.001(b)(1)(V)); Act of May 29, 2023, 88th Leg., R.S., ch. 675, §§ 1, 8, 2023 Tex. Sess. Law. Serv. 1646–47 (codified at FAM. § 161.001(f), (g)). The original petition to terminate the parent-child relationship in this case was filed prior to September 1, 2023. We therefore apply the statute in effect on the date the suit was filed.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the factfinder—in this case the trial court— is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re L.C.C.*, 667 S.W.3d 510, 513 (Tex. App.—Eastland 2023, pet. denied); *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent–child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the children's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the children's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and well-being of the children. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the children, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the children's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the children may recur in the future if the children are returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Further, the factfinder may infer from a parent's past inability to meet the children's physical and emotional needs an inability or unwillingness by the parent to meet the children's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

*Evidence Presented at Trial*

The Department became involved with Z.B., J.B., and S.B. in April 2022, following Appellant's attempt to seek in-patient care at a domestic violence shelter. Appellant was denied entry into the shelter and became upset, leaving with the children. Shandria Taylor, an investigator with the Department, initiated the investigation and became concerned about Appellant's mental health and possible

4

drug use. Taylor testified that Appellant indicated that she was suffering from head trauma due to prior abusive relationships.

At the time, Appellant was on probation for the possession of a controlled substance. On May 18, 2022, Taylor asked Appellant to submit to a drug test, which Appellant initially refused, claiming she had a negative test when she was screened through her probation officer. Appellant admitted to using methamphetamine in March, prior to the time when the Department opened their investigation. On July 1, 2022, Appellant agreed to an instant oral swab test, which was negative for drugs. Less than one week later, on July 7, 2022, Appellant submitted to both a hair follicle test and urine test. The hair test was positive for amphetamine and methamphetamine, and the urine test was negative for drugs of any kind.

The Department indicated at trial that there was an unsuccessful attempt to adopt a safety plan for Appellant prior to removing the children. The safety plan included complete supervision of Appellant's interactions with, and care of, the children.

The 2INgage permanency coordinator, Kristian Castro, testified that a family service plan was created for Appellant in September 2022, with a goal of reunification or kinship adoption by August 2023. The family service plan required that Appellant: maintain safe and stable housing; provide any change of address or phone number information within seventy-two hours; gain prior approval from 2INgage for any person who may act as a caregiver for the children or visit the home/children; and allow announced and unannounced visits to the home. The trial court subsequently ordered Appellant to comply with each requirement set out in the Department's family service plan during the pendency of the suit. Castro indicated that Appellant failed to comply with several of the provisions of the family service plan: the maintenance of safe and stable housing provision, the contact information provision, and the allowance of announced and unannounced visitation provision.

5

Castro also testified that Appellant was required to submit to random drug tests—with negative results—but that Appellant also did not comply with that requirement.

The family service plan additionally required Appellant to participate in a psychological evaluation and counseling. Castro testified that Appellant failed to complete either of those requirements. Appellant was incarcerated during the termination hearing. Prior to her incarceration, Castro offered to assist Appellant with the requirements of the family service plan, but Appellant refused the assistance.

At the time of the termination hearing, October 9, 2023, the children were placed with S.A., Appellant's mother. Castro reported that the children were all doing well, and that S.A. had made a long-term, permanent commitment to Z.B., but expressed that she was not able to care for the twins J.B. and S.B. on a long-term basis. Z.B. was almost five years old at the time of trial, but the twins were not yet two years old. Castro testified that the twins were receiving services for developmental delays related to speaking and social skills.

S.A. testified that, at the time of the termination hearing, she was in the process of becoming licensed so that she would be able to adopt Z.B. Because Z.B. had been living with S.A. since she was three days old—apart from short time periods when she lived with Appellant—S.A. considered herself to be Z.B.'s mother. S.A. indicated that if she had felt that she was able to meet the needs of the twins, she would have wanted to adopt them as well.

Appellant also testified at the termination hearing. Appellant told the trial court that she was currently incarcerated in the Henley SAFPF Unit, and that she had been there for approximately two months. Appellant explained that SAFPF is a counseling-based program, aimed to assist with addiction, identification of personal triggers, and how to move forward. Appellant indicated that she had been sober since the beginning of May 2023, approximately five months, and that she was fully

participating in the SAFPF program. Appellant asked the trial court not to terminate her parental rights, indicating that she would not get into trouble again because she did not want to return to prison and be away from her family. Appellant testified that she did not realize how her addiction was impacting "so many people" in her life prior to SAFPF, but that the program has helped her. Appellant explained that she was committed to continuing to work through programs to help her children, and that if she were to become a danger to the children in the future, she would agree to their removal as she had done before.

Appellant claimed that previously, she did not have the resources to become—or stay—sober. She admitted to first using methamphetamine at twelve years old and to struggling with methamphetamine during a prior CPS investigation case in 2016. Appellant was additionally previously incarcerated for one year on August 30, 2018, following an adjudication and revocation of her community supervision on a possession-of-methamphetamine offense. The underlying offense occurred on November 4, 2016, and the adjudication of Appellant's guilt was deferred; she was placed on community supervision for a period of four years on January 18, 2018 for that offense.

The trial court terminated Appellant's parental rights as to each child, under subsections (E) and (O) of Section 161.001(b) of the Texas Family Code, and found that termination was in the best interest of the children. Additionally, the trial court found that the Department had made reasonable efforts to return the children to Appellant before the trial, and despite such efforts, dangers remained, preventing the return of the children to Appellant. Specifically, the trial court pointed to the Department's efforts to attempt a safety plan before removal, the family service plan, the prior efforts of the Department to offer and engage Appellant in services and discuss housing options with Appellant, and the Department's search for family and fictive kin options that would allow for a less restrictive option than termination.

*Analysis*

In Appellant's three issues,[3] she challenges the legal and factual sufficiency of the evidence to support the trial court's findings that termination of her parental rights would be in the best interest of each of the children: Z.B., J.B., and S.B. *See* FAM. § 161.001(b)(2). There is a "strong presumption" in Texas that the best interest of a child is served by keeping the child with the parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, as we have said, the focus for a best interest determination is on the child, not the parent. *Interest of D.A.Z.*, 583 S.W.3d 676, 681 (Tex. App.—El Paso 2018, no pet.); *see also C.H.* 89 S.W.3d at 26 (While it is "imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."). Giving due regard to the presumption of keeping a child with the parent, the evidence presented at trial, and the *Holley* factors, we hold, as explained below, that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights would be in the best interest of Z.B., J.B., and S.B. *See Holley*, 544 S.W.2d at 371–72.

With respect to Z.B.'s best interest, the evidence shows that Appellant tested positive for methamphetamine during the Department's investigation, failed to complete her family service plan, failed to maintain safe and stable housing for the children, and was previously incarcerated for possession of methamphetamine. The Department was unable to put a safety plan in place for the children, and they were removed from Appellant's care. The 2INgage permanency manager testified that

---

[3]Appellant does not challenge the trial court's findings under subsection (E)—engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child—or subsection(O)—the failure to comply with the provisions of a court order establishing the actions necessary for the parent to obtain the return of the child. *See* FAM. § 161.001(b)(1)(E), (b)(1)(O).

Appellant did not submit to random drug tests as required, nor did she cooperate with the permanency manager to be able to complete unannounced or announced visitation. Appellant additionally provided no concrete plan to stay sober and rebuild her life following release from the SAFPF program. Viewing the evidence in the light most favorable to the trial court's best interest finding, and considering the record as it relates to the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of Appellant, Appellant's lack of compliance with her family service plan, and the plans for Z.B.—to be adopted into the home she has known her entire life, we hold that a rational trier of fact could have formed a firm belief or conviction that its best interest finding was true. *See id.*; *see also J.P.B.*, 180 S.W.3d at 573.

With respect to the best interest of J.B. and S.B., the evidence is quite similar to that regarding Z.B.—save and except for the plans to be adopted by S.A. Viewing the evidence in the light most favorable to the trial court's finding of what is in the best interest of the children, and considering the record as it relates to their emotional and physical needs now and in the future, the emotional and physical danger to each child now and in the future, the parental abilities of Appellant, and Appellant's lack of compliance with her family service plan, we hold that a rational trier of fact could have formed a firm belief or conviction that the trial court's best interest findings as to J.B. and S.B. were true. *See Holley*, 544 S.W.2d at 371–72; *see also J.P.B.*, 180 S.W.3d at 573. Thus, the evidence is legally sufficient to support the order of termination as it relates to the best interest of each child.

Further, based upon our review of the entire record, *without* viewing the evidence in the light most favorable to the trial court's best interest finding, but still giving due deference to that finding, we hold that the trial court reasonably could have formed a firm belief or conviction that termination of the parent–child

relationship between Appellant and Z.B., J.B., and S.B. was in each of the children's best interest. *See Holley*, 544 S.W.2d at 371–72; *see also C.H.*, 89 S.W.3d at 25–26. S.A. testified that Z.B. had lived with her for most of Z.B.'s life, even prior to involvement by the Department, and that Z.B. had had limited contact with Appellant during that time. Appellant even indicated that if she was not able to stay sober, she would leave her children again. Although Appellant indicated remorse regarding her prior actions; however, she was not able to discuss why the trial court should trust that her release from this program would lead to a different result in the children's circumstances than it had before. Appellant's plan to care for the twins was a plain statement that she would raise them in a stable home, but she did not specifically indicate how she would do that. In follow-up, when asked "how" she would do so, she globally answered, that she was simply "going to have a job and money . . . [and] a vehicle and a house," and spoke about having a vehicle "already set" and having talked with sober people that are willing to let her stay in their house in order to bring her children there. Those were generic statements that lacked concrete detail on *how* Appellant planned to secure and maintain these things, and therefore were not necessarily helpful to the trial court in its best interest determination. The permanency manager testified that she had offered to help Appellant comply with the family service plan before, but that Appellant had refused her assistance.

Appellant did not deny that she used and had tested positive for methamphetamine, nor did she deny that she had not completed the family service plan. In fact, Appellant's testimony does little to dispute much of the testimony from the permanency case manager and S.A. Instead, Appellant's testimony indicates that, although she desires to make changes for her children, she was not able to articulate a plan that would support her ability to do so. That testimony does little to combat the evidence that she had failed to comply with the family service plan or

to remain free of illegal substances—even following her prior incarceration for possession of methamphetamine. Furthermore, while the evidence that Appellant would like to care for her children was certainly favorable, it cannot ensure a healthy, safe, and stable environment for the children, such that a reasonable factfinder could not have resolved the disputed evidence in favor of Appellant. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Thus, the evidence is also factually sufficient to support the trial court's order of termination as it relates to the best interest of Z.B., J.B., and S.B.

Based on the *Holley* factors and our review of the record, we cannot hold in this case that the trial court's findings as to best interest of each child are not supported by clear and convincing evidence. Accordingly, we overrule all three of Appellant's issues.

*This Court's Ruling*

We affirm the trial court's order of termination.


W. BRUCE WILLIAMS
JUSTICE


April 11, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.